**In the matter of FESCO PLASTICS CORPORATION, INC., Debtor–Appellee,**

**Appeal of LISK ELECTRIC, INC., Cal–West Plastics, Inc., Industrial Air Compressors, Inc., and Aaron S. Wolff.**

No. 92–3266.

United States Court of Appeals, Seventh Circuit.

Argued April 15, 1993.

Decided June 2, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied June 25, 1993.

Aaron S. Wolff (argued), Chicago, IL, for Lisk Elec., Inc., Cal–West Plastics, Inc. and Indus. Air Compressors, Inc.

Aaron S. Wolff, pro se.

Jay Erens, Hopkins & Sutter, Timothy A. French (argued), Kenneth M. Brown, Neal, Gerber & Eisenberg, Chicago, IL, for debtor-appellee.

Before CUMMINGS and MANION, Circuit Judges, and RONEY, Senior Circuit Judge.*

CUMMINGS, *Circuit Judge.*

The case involves the scope of a bankruptcy court's equitable power under 11 U.S.C. § 105(a). There are two issues. First, does a creditor have a right to recover post-petition interest on his claim where he was paid later than other creditors of the same class? Second, does an attorney whose work directly benefits creditors other than his clients have a right to recover fees from those creditors?

## I. BACKGROUND

The facts are relatively straightforward. In September 1984, Fesco Plastics Corporation filed for bankruptcy under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 1101 *et seq.* Fesco's schedule of debts listed several claims as undisputed, including those of Lisk Electric, Cal–West Plastics, and Industrial Air Compressors, three unsecured creditors (the "Lisk creditors"). Because they were listed on Fesco's schedule, the Lisk creditors did not file proofs of their claims in the bankruptcy court. They did so relying on 11 U.S.C. § 1111(a), which states that no proof

---

* The Honorable Paul H. Roney, Senior Circuit Judge of the Eleventh Circuit, is sitting by designation.

of claim is necessary when a debt is undisputed, non-contingent, and unliquidated, because such claims are "deemed filed" for Chapter 11 purposes.

In October 1985, the bankruptcy court converted the case to a Chapter 7 dissolution action. 11 U.S.C. §§ 701 *et seq.* The court chose February 6, 1986, as the last date to file claims in the case, but stated that "Creditors who have already filed a proof of claim need not file another claim." *In re Fesco Plastics Corp., Inc.,* 908 F.2d 240, 241 (7th Cir.1990). Based on that statement, the Lisk creditors did not file proofs of their claims before the bar date, seeing no need to do so. The trustee, however, disputed their claims by arguing that they had never been filed in the Chapter 7 case. Both the bankruptcy court and the district court agreed that the claims were barred, but this Court reversed those decisions. The Court held that in bankruptcy cases filed before August 1, 1987,[1] a creditor whose claim is deemed filed in a Chapter 11 case need not file a separate proof of claim when the case is converted to Chapter 7. *Id.* at 242–243.

After this victory for the Lisk creditors, the trustee concluded in August 1991 that all deemed-filed creditors, not just the Lisk group, were eligible to recover from the bankruptcy estate. The Lisk creditors and their attorney, Aaron Wolff, reacted immediately by filing two petitions in the bankruptcy court. The first petition sought an immediate payment of 40% of the Lisk creditors' claims in order to bring them even with those unsecured creditors who had actually filed claims; those creditors had received a 40% distribution in February 1987. In addition, the Lisk creditors requested interest on the 40% payment dating from February 1987. The theory here was that if the trustee had not improperly denied their claims, they would have been paid five years ago, and thus they should recover for the loss of the use of their money during that period.

In the second petition, Wolff asked for attorney's fees from the hundreds of deemed-filed creditors who were now able to recover on their claims thanks to his work for the Lisk group. Using both the lodestar and percentage methods of calculating fees, Wolff asked the bankruptcy court to award him $120,945 out of the distributions to the non-Lisk creditors. Those creditors had claims totalling between $800,000 and $900,000, and were expected to receive close to half of that eventually.

The bankruptcy court denied both petitions and the district court affirmed. Wolff and the Lisk creditors now challenge those decisions.

## II.  DISCUSSION

There is no Bankruptcy Code section entitling the Lisk creditors to interest on their 40% distribution, nor is there a section requiring the non-Lisk creditors to pay for Wolff's legal work. The appellants, however, insist that they have an equitable right to recover on both claims. Each issue, then, requires us to examine the scope of a bankruptcy court's equitable power.

Section 105(a) of the Code delineates the limited equitable power of bankruptcy courts, stating, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under this section, a court may exercise its equitable power only as a means to fulfill some specific Code provision. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 968, 99 L.Ed.2d 169 (1988); *In re Morristown & Erie R. Co.,* 885 F.2d 98, 100 (3d Cir.1989); see *In re Lapiana,* 909 F.2d 221, 224 (7th Cir.1990) ("We deprecate flaccid invocations of 'equity' in bankruptcy proceedings."). By the same token, when a specific Code section addresses an issue, a court may not employ its equitable powers to achieve a result not contemplated by the Code. See *Morristown & Erie,* 885 F.2d at 100; *Levit v. Ingersoll Rand Financial Corp.,* 874 F.2d 1186, 1198

---

1.  The date when the case was filed is significant because Bankruptcy Rule 1019, which governs the status of claims in a case converted from Chapter 11 to Chapter 7, was amended as of August 1, 1987. The amendment changed the Rule to require Chapter 11 creditors to file new claims when the case moves to Chapter 7. Before the amendment, however, the Rule did not require such refiling. *Fesco Plastics,* 908 F.2d at 241–243.

n. 10 (7th Cir.1989); *In re FRG, Inc.*, 124 B.R. 653, 659 (Bankr.E.D.Pa.1991).

### A. *Interest on 40% Distributions*

While the unsecured creditors who actually filed claims received a 40% payment on those claims in February 1987, the Lisk creditors and other deemed-filed, unsecured creditors did not receive their 40% distribution until 1992. The Lisk creditors now seek to recover interest on their money for the five years when the trustee improperly withheld it. They base their argument on 11 U.S.C. § 726(b), which requires pro rata distribution to claimants of the same class. If they do not receive interest, the argument runs, then they will have actually been paid less than other creditors of the same class (who have had the use of their 40% payment for the past five years), and will not have obtained a true pro rata share. Thus, they ask the court to invoke its equitable power and enforce their rights under § 726(b) by granting them interest.

■ The age-old rule in bankruptcy, adopted from the English system, is that interest on claims stops accruing when the bankruptcy petition is filed. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 246, 109 S.Ct. 1026, 1033, 103 L.Ed.2d 290 (1989); *Nicholas v. United States*, 384 U.S. 678, 682, 86 S.Ct. 1674, 1679, 16 L.Ed.2d 853 (1966); *Bruning v. United States*, 376 U.S. 358, 362, 84 S.Ct. 906, 908, 11 L.Ed.2d 772; (1964); *New York v. Saper*, 336 U.S. 328, 330 n. 7, 69 S.Ct. 554, 555 n. 7, 93 L.Ed. 710 (1949); *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 163, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946); *Sexton v. Dreyfus*, 219 U.S. 339, 344, 31 S.Ct. 256, 257, 55 L.Ed. 244 (1911); 2 William Blackstone,

Commentaries *488. In other words, creditors cannot recover post-petition interest on their claims. This rule has been written into the Bankruptcy Code at 11 U.S.C. § 502(b)(2).[2] One justification for the rule is that it promotes certainty and eases the administration of the estate by fixing a date when the affairs of the bankrupt are considered to be wound up. *Sexton*, 219 U.S. at 344–345, 31 S.Ct. at 257–258. By setting a date when interest stops, the rule saves the trustee from having to continuously recalculate the amount due each creditor. *Vanston Committee*, 329 U.S. at 164, 67 S.Ct. at 240. It also saves the estate from having to pay extra for the delay in payment when that delay is necessary if the courts are to preserve and protect the estate for the benefit of all creditors. *Id.* at 163, 67 S.Ct. at 240; *Thomas v. Western Car Co.*, 149 U.S. 95, 116–117, 13 S.Ct. 824, 833, 37 L.Ed. 663 (1893). Further, the rule allows the trustee to fulfill the duty of objecting to questionable claims, 11 U.S.C. § 704(5), without worrying that an unsuccessful objection will lead to claims for interest and increased administrative expense. Finally, the rule prevents any unmerited gain or loss by creditors whose claims have different interest rates or who are paid at different times by the bankruptcy court; all are treated equally. *Vanston Committee*, 329 U.S. at 164, 67 S.Ct. at 240; *In re Goldblatt Bros., Inc.*, 61 B.R. 459, 463 (Bankr.N.D.Ill.1986).

■ Two major exceptions to the rule have developed over time. One is that creditors may recover post-petition interest when the debtor turns out to be solvent. *Ron Pair*, 489 U.S. at 246, 109 S.Ct. at 1033; *Vanston Committee*, 329 U.S. at 164, 67 S.Ct. at 240. This exception is included in the

---

**2.** Section 502(b)(2) provides:

§ 502 **Allowance of claims or interests**

 \*     \*     \*     \*     \*     \*

(b) Except as provided in [certain subsections], if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

 \*     \*     \*     \*     \*     \*

(2) such claim is for unmatured interest[.]

Courts routinely cite this section as embodying the general rule against post-petition interest. *United Savings Ass'n v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 373, 108 S.Ct. 626, 631–32, 98 L.Ed.2d 740 (1988); *In re Hanna*, 872 F.2d 829, 831 (8th Cir.1989).

Bankruptcy Code at 11 U.S.C. § 726(a)(5).[3] The second exception allows post-petition interest for secured creditors whose security is worth more than the sum of the principal and all interest due. *United Savings Ass'n v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 372–373, 108 S.Ct. 626, 630–632, 98 L.Ed.2d 740 (1988); *Vanston Committee,* 329 U.S. at 164, 67 S.Ct. at 240. This is codified at 11 U.S.C. § 506(b).[4]

■ The Lisk creditors attempt to sidestep § 502(b)(2)'s bar on post-petition interest by noting that it only refers to interest on *claims,* while they are seeking interest on their tardy 40% *distributions.* This semantic sleight-of-hand is unpersuasive. Although it is true that the Lisk creditors only want interest for the period between the earlier distribution and the time they received their distributions, rather than from the date of the petition, the fact is that they are requesting interest that would have had to accrue after the petition was filed. The cases and § 502(b)(2), however, make it clear that interest stops accruing when the petition is filed. *Ron Pair,* 489 U.S. at 246, 109 S.Ct. at 1033; 2 Collier on Bankruptcy, ¶ 502.02[2] at 502–30 (Lawrence P. King ed., 15th ed. 1993). Interest does not start accruing again whenever a distribution is made to fewer than all creditors in a class; to hold that it did would needlessly complicate the administration of estates and eviscerate the benefits of the rule.

Alternatively, the Lisk creditors argue that § 726(b)'s command of pro rata distribution promotes the central policy of equality among creditors, and therefore required the bankruptcy court to acknowledge a fresh exception to § 502(b)(2). For that reason, and because they believe that denying them interest would result in a windfall to the other unsecured creditors, they argue that the court should have used its equitable power to enforce § 726(b) by giving them interest.

The problem with the plea for an equitable exception to the general rule of § 502(b)(2) is that the exceptions to that rule are expressly stated in the Bankruptcy Code. See 11 U.S.C. §§ 506(b) (oversecured creditors), and 726(a)(5) (surplus estate). If Congress had intended to recognize other exceptions it would have put them in the Code as well. See *United Savings,* 484 U.S. at 372–373, 108 S.Ct. at 631–632. For a bankruptcy court to create a new exception would go beyond the authority granted in § 105, which allows such courts to use their equitable powers only as necessary to enforce the provisions of the Code, not to add on to the Code as they see fit. *In re Middleton Arms, Ltd. Partnership,* 934 F.2d 723, 725 (6th Cir.1991); *Morristown & Erie,* 885 F.2d at 100.

Another problem with the Lisk creditors' argument is that it contravenes an established tenet of statutory construction: when two statutes address the same question, the more specific one controls. *Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980). Section 502(b)(2) addresses the interest question head-on, directly stating that unmatured interest is not recoverable. Section 726(b), in contrast, does not mention interest at all. Indeed, it takes a strained reading to suggest that § 726(b) requires the trustee to either pay all creditors of the same class on the same day or be stuck paying interest to anyone paid a day late. A primary purpose of the rule stopping the accrual of interest when the petition is filed is to prevent such administrative headaches, *Sexton,* 219 U.S. at 344–345, and until Congress creates a specific exception to § 502(b)(2) for later-paid creditors we will not infer one.

### B. *Common Fund*

The attorney for the Lisk creditors, Aaron Wolff, believes that he is entitled to attorney's fees under the common fund doctrine, which is used to require non-clients who di-

---

**3.** Section 726 determines the order of distribution of the debtor's estate. Under subsection (a)(5), any money remaining after all other claims have been paid is used to pay post-petition interest on those claims. If anything remains after that, it goes to the debtor. 11 U.S.C. § 726(a)(6).

**4.** A third exception, mentioned in discussions of pre-Code law, allows creditors holding securities as collateral to recover dividends and interest earned by those securities after the petition. *Ron Pair,* 489 U.S. at 246, 109 S.Ct. at 1033; *Sexton,* 219 U.S. at 346, 31 S.Ct. at 258.

rectly benefit from an attorney's work to pitch in to pay for that benefit. The benefit to the non-Lisk creditors is that thanks to Wolff their claims are now deemed filed, and they are recovering on those claims to the same extent as all other unsecured creditors.

■ The common fund doctrine was first recognized by the Supreme Court in *Trustees v. Greenough,* 105 U.S. 527, 26 L.Ed. 1157 (1881), and most recently discussed in *Boeing Co. v. Van Gemert,* 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). Essentially, the doctrine holds that "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing,* 444 U.S. at 478, 100 S.Ct. at 749. It is most appropriate when (1) the class of persons benefitted by the lawsuit is small and easily identifiable, (2) the benefits can be traced with some accuracy, and (3) the costs of the litigation can be shifted accurately to those who profit by it. *Id.* at 478–479, 100 S.Ct. at 749–750, citing *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 265 n. 39, 95 S.Ct. 1612, 1625–26 n. 39, 44 L.Ed.2d 141 (1975). This is an equitable doctrine, and is usually justified on the ground that it prevents unjust enrichment of the non-litigants, who have taken a free ride on the trailblazer's efforts. *Boeing,* 444 U.S. at 478, 100 S.Ct. at 749; *Mills v. Electric Auto–Lite,* 396 U.S. 375, 392, 90 S.Ct. 616, 625, 24 L.Ed.2d 593 (1970); *Gibbs v. Blackwelder,* 346 F.2d 943, 945 (4th Cir.1965). Jurisdiction over the fund enables a court to prevent such inequity by assessing fees out of the entire fund, spreading the burden proportionately among those benefitted. *Boeing,* 444 U.S. at 478, 100 S.Ct. at 749.

■ As noted earlier, § 105 of the Bankruptcy Code states that a bankruptcy court may exercise its equitable power only as necessary to carry out the provisions of the Code. The Code specifies when attorney's fees may be awarded. See 11 U.S.C. §§ 327 to 330, 1103, 503(b)(4). Since none of these provisions applies to Wolff,[5] it would seem that awarding fees under the common fund doctrine is beyond the bankruptcy court's mandate. Wolff, however, maintains that it is within the bankruptcy court's power because he seeks fees from the non-Lisk creditors only, not from the estate, and therefore the Code's provisions are completely irrelevant.[6] In other words, the estate will not lose a dime by giving him fees out of the common fund; all he asks is that the court order the trustee to take the money out of the distributions for him. But a bankruptcy court is simply not authorized to do whatever is necessary to reach an equitable result; it may only do whatever is necessary to enforce the Code, and the Code does not address the situation here. Though it would obviously make Wolff's life much easier if the trustee collected his fees for him, the mission of the bankruptcy court is to administer the estate under the Code, not to settle side issues between creditors. As this Court put it in *In re Chicago, Milwaukee, St. Paul & Pacific R.,* 791 F.2d 524, 528 (1986),

> The fact that a [bankruptcy] proceeding is equitable does not give the judge a free-floating discretion to redistribute rights in accordance with his personal views of justice and fairness, ... The function of equitable considerations in a bankruptcy proceeding is to guide the division of a pie that is too small to allow each creditor to

5. Sections 327 to 330 and 1103 are inapplicable because he was not employed by the trustee, debtor, or a creditors' committee. Section 503(b)(4), which entitles attorneys to recover fees when they "mak[e] a substantial contribution in a case", only applies in cases under Chapters 9 and 11, and this is a Chapter 7.

6. Wolff also asserts that the trustee does not have standing to object to his fee request because the fees would come from the non-Lisk creditors, not the estate or the trustee. But 11 U.S.C. § 704(5) plainly declares that "if a purpose would be served, [the trustee shall] examine proofs of

claims and object to the allowance of any claim that is improper." As the leading treatise explains, "the duty of the trustee is to eliminate those claims which may not share in a distribution of the debtor's assets to the detriment of those creditors whose claims are proper." 3 Collier on Bankruptcy, ¶ 502.01[2] at 502–11 (Lawrence P. King ed., 15th ed. 1993). Here the trustee had to determine whether Wolff's claim was valid, otherwise he might have improperly reduced the non-Lisk creditors' distribution. We therefore find he has standing.

get the slice for which he originally contracted.

See also *Guerin v. Weil, Gotschal & Manges,* 205 F.2d 302, 304 (2d Cir.1953) (A. Hand, J.) ("Although it has been broadly stated that a bankruptcy court is a court of equity, the exercise of its equitable powers must be strictly confined within the prescribed limits of the Bankruptcy Act.") (citation omitted). Declaring that Wolff has a right to fees from the non-Lisk creditors is not "necessary or appropriate" to carrying out any Code provision or to efficiently administering the estate. Consequently, there was no reason for the bankruptcy court to invoke its equitable powers in his behalf.

AFFIRMED.