**In the Matter of Oliver PLUNKETT and Monica Plunkett, Debtors.**

**Appeal of EMERALD BUILDERS, INC.**

No. 95–3618.

United States Court of Appeals, Seventh Circuit.

Argued April 1, 1996.

Decided April 30, 1996.

Kevin J. Sjostrom, argued, Wauwatosa, WI, for Emerald Builders, Inc.

Mark L. Metz, argued, Reinhart, Boerner, Vandeuren, Norris & Rieselbach, Milwaukee, WI, for Ralph C. Anzivino.

Before CUMMINGS, EASTERBROOK, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

Oliver Plunkett's real estate business has been in bankruptcy reorganization since 1982. One dispute concerning the estate has been here before. *Belisle v. Plunkett,* 877 F.2d 512 (7th Cir.1989). Plunkett kept poor records and played false with some of his investors, so administration of the estate proved difficult. Plunkett's wrongdoing caused the bankruptcy court to deny him a discharge. But by December 1992 trustee Ralph C. Anzivino had marshaled the estate's assets, and the creditors had agreed on a plan of reorganization, which was confirmed in January 1993. Unsecured creditors will receive roughly half the principal amount of the debts.

News that the estate expected to distribute cash to creditors flushed additional claimants out of the woodwork. Emerald Builders held a junior security interest in property Plunkett possessed under a land contract. When Plunkett defaulted in April 1982, the senior creditor began a foreclosure action in state court. The bankruptcy petition, filed the same month, stayed that proceeding. 11 U.S.C. § 362. On May 7, 1982, Emerald sent a letter to the court notifying it of the securi-

ty interest and the amount of the debt (some $300,000). After finding that Emerald and the senior lender were adequately secured, Chief Bankruptcy Judge Clevert declined to modify the stay to permit foreclosure, and the trustee in bankruptcy resumed the monthly payments to which the creditors were entitled. At the end of August 1983, however, the trustee abandoned the property under 11 U.S.C. § 554, and the state court entered a judgment of foreclosure. Emerald's two shareholders bought the property at the sheriff's sale in November 1983, paying just a little more than the amount of the senior indebtedness. Emerald's unsatisfied balance continued to hover near $300,000, but Emerald did not ask the state court to enter a deficiency judgment—and it did not tell the bankruptcy court what had happened.

Years passed. The bankruptcy court set January 22, 1988, as the final date for creditors to file claims. Because Emerald had informed the court of its security interest in the abandoned parcel, the trustee sent Emerald a notice—which was returned undelivered, for Emerald had moved its office, and the year within which the Postal Service forwards mail had expired. Emerald did not respond to published notices of the bar date. More years passed. The trustee used his avoiding powers to bring property into the estate. The creditors dickered and agreed on a plan of reorganization. Publication of this plan, which included a substantial distribution to creditors, caught Emerald's eye, although the details of the plan were not published as widely, or as often, as the notice of the bar date had been. On January 8, 1993, Emerald filed an "amended proof of claim" for $362,590.99—the deficiency from the 1983 foreclosure sale, plus the real estate taxes Emerald's principals had paid to clear the title after the sale. Honoring this claim would reduce other creditors' payments by between 3¢ and 4¢ per dollar of debt.

■ Calling the document filed on January 8 an "amended proof of claim" is something of a stretch, because Emerald had not filed a proof of claim in the first place. What was there to amend? Emerald replies that its letter of May 1982 is an "informal" proof of claim—"informal" because not in the ap-

propriate form, or submitted at the appropriate time, but a "proof of claim" nonetheless because it contains most of the required information. The court remarked in *Wilkens v. Simon Bros., Inc.,* 731 F.2d 462, 464 (7th Cir.1984), that an informal proof of claim might supply the foundation for an amendment. That is sound enough in principle. Cf. *Smith v. Barry,* 502 U.S. 244, 112 S.Ct. 678, 116 L.Ed.2d 678 (1992) (recognizing the existence of "informal notices of appeal" in federal practice). Because the trustee is content to treat the letter of May 1982 as an informal proof of claim, we need not decide whether it contains the essential information. (Fed. R. Bankr.P. 3001(d) requires proof that a security interest was perfected, and the letter of May 1982 furnished none.)

■ Under Fed. R. Bankr.P. 7015, the rules for amendments of documents in adversary proceedings track the requirements in Fed.R.Civ.P. 15 for amendments of pleadings in civil litigation. Proof of claim is a core rather than an adversary proceeding, but Fed. R. Bankr.P. 9014 says that "[t]he court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply." Trustee Anzivino doubts that a secured debt in 1982 is close enough to a deficiency claim in 1993 to permit amendment under the standards of Fed. R. Civ.P. 15(c), but Emerald has a deeper problem. Under Rule 15(a) it needs leave of court to amend after a "responsive pleading" has been filed—and if the letter of May 1982 is a claim, then there have been oodles of responsive pleadings since. A bar date was set and ignored. Criteria in Rule 15 do not tell a bankruptcy court when it may allow post-bar-date amendments. We held in *In re Unroe,* 937 F.2d 346 (7th Cir.1991), that the court's general equitable powers under 11 U.S.C. § 105(a) permit it to allow such untimely amendments, but the question remains whether the court should grant leave to make any particular amendment.

■ The bankruptcy judge did not express a view on this subject, because he thought that by January 1993 Emerald was no longer a creditor of the estate, making amendment futile. Emerald did not file a cross-claim in the foreclosure action and did not receive a

deficiency judgment. That ended its status as a creditor, the bankruptcy court concluded. Although the trustee had not made such an argument in the bankruptcy court, and did not urge it as a ground of decision in the district court, the district judge affirmed for this reason alone. Emerald contends that this misunderstands Wisconsin law—that a foreclosure sale wipes out the junior creditor's security interest but does not affect the underlying debt. Trustee Anzivino's brief does not defend the district court's rationale, and at oral argument counsel for the trustee conceded that Emerald is correct on this score. Agreement between the parties means that we need not explore the issue on our own; parties to civil litigation are free to remove non-jurisdictional issues from the agenda.

■ Having decided the case on a substantive ground that the parties agree is incorrect, the bankruptcy judge did not reach the question whether Emerald's effort to amend its claim came too late. Ordinarily a remand would follow, but an order to hold proceedings that can have but one outcome would be a gratuitous imposition on the parties, the judges, and the litigants in other cases waiting in the queue for judicial attention. So clear is it that Emerald acted too late that any order permitting its amendment would be an abuse of discretion.

■ A decade is a long time even in a complex reorganization. Although Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires", we concluded in *Unroe* that justice does not *require* amendment, and indeed rarely *permits* amendment, once the last date for filing claims has passed. "Late-filed claims, especially in the bankruptcy context, disrupt orderly discharge and should generally be barred." 937 F.2d at 351. See also *In re Stavriotis,* 977 F.2d 1202 (7th Cir.1992). Timely presentation is essential to permit investigation and resolution of contests. Consider Emerald's claim: the change from a secured, contingent debt in 1982 to an unsecured, fixed debt in 1983 was substantial. Although the results of a noncollusive public sale are conclusive, see *BFP v. Resolution Trust Corp.,* —— U.S. ——, 114 S.Ct.

1757, 128 L.Ed.2d 556 (1994), the qualifier ("noncollusive") may call for investigation. Why did Emerald's investors, rather than Emerald itself, buy the property? Apparently for tax benefits; but do these count as profits that should be attributed to Emerald for the purpose of determining value received at the sale? Why were the investors the only bidder, as they appear to have been? A prompt amendment of the claim would have enabled the trustee to inquire. For all this record reveals, the sale was on the up-and-up, and the investors paid market value, but it is hard to be sure at this remove. The trustee lacked incentive to monitor at the time; having abandoned property recently thought to be worth slightly more than the liens against it, the trustee thought that the debts would be paid in full and had no reason to keep track of events in state court in 1983 and 1984.

Recognizing that the "freely allowed" language of Rule 15(a) plays no role after the bar date, the parties press on us a long list of considerations from *In re Miss Glamour Coat Co.,* 46 A.F.T.R.2d 6083, 1980 WL 1668 (S.D.N.Y.1980), which they take to be the leading case. We reproduced these in *Unroe* and added that "recitation of the *Glamour Coat Co.* factors could ... justify nearly any outcome a bankruptcy judge desires." 937 F.2d at 351 n. 5. To say that a set of considerations can "justify nearly any outcome" is to say that it is worthless. Legal rules have value only to the extent they guide primary conduct or the exercise of judicial discretion. Laundry lists, which may show ingenuity in imagining what *could* be relevant but do not assign weights or consequences to the factors, flunk the test of utility. Apparently the parties did not take this cue from *Unroe,* so we now make our disapproval of *Miss Glamour Coat* explicit.

If not a laundry list, then what? The Federal Rules of Bankruptcy Procedure themselves provide the answer. Rule 9006(b)(1) says that "when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court" the judge may permit a party or counsel to take the required step, after the time for doing so has

742

expired, "where the failure to act was the result of excusable neglect." The bar date for filing claims in a Chapter 11 reorganization is set by order of the court and therefore comes within the rule. Rule 9006(b)(2) says that the court may not enlarge the time specified by seven particular rules; the rules concerning the bar date for claims are not on the list. Rule 9006(b)(3) adds that some other rules set limits on belated action; Rule 3002(c), to which Rule 9006(b)(3) points, concerns claims in Chapter 7, 12, and 13 cases but has no bearing on this Chapter 11 reorganization. See also *In re Singson*, 41 F.3d 316 (7th Cir.1994), which adopts "excusable neglect" as the normal minimum requirement for belated action, when the Bankruptcy Code and Rules do not provide a different standard. ("Minimum" is an important qualifier, because "excusable neglect" is a necessary but not a sufficient condition for untimely action. Tardy filings that cause prejudice to other parties, or increase the cost of administering the estate, may be inappropriate even if the neglect is excusable.)

■ "Excusable neglect" has an established meaning. See *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). One ancillary rule is that inattentiveness to the litigation is not excusable. See *Prizevoits v. Indiana Bell Telephone Co.*, 76 F.3d 132 (7th Cir.1996). A litigant who behaves like Somnus cannot expect the judge to rouse him, or permit him to catch up with a case that has passed him by. Missing a filing deadline because of slumber is fatal. And that is what Emerald did. After sending the letter of May 1982, Emerald's principals simply assumed that it would suffice. The assumption was not based on an interpretation (or even a plausible misinterpretation) of a statute, rule, or communication from the court; it was self-generated and foolish. Having satisfied the only requirement it invented for itself, Emerald paid no attention to the case. The debt was converted from secured to unsecured, and it was quantified in the process; Emerald did not tell anyone. Emerald moved its office and did not send the new address to the court. It simply abandoned the litigation. In a world where a single day's delay can be dispositive, *see United States v. Locke*, 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985); *Tuke v. United States*, 76 F.3d 155 (7th Cir.1996), a decade's lassitude is unpardonable. The Bankruptcy Code does not require much; a simple, one-page claim suffices. Creditors who do not do even that much, on time, forfeit their entitlement to distributions from the estate.

AFFIRMED.