In re NATIONAL STEEL CORP. et al., Debtors.

No. 02 B 08699.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Nov. 4, 2004.

lacked regular income where his unsecured debt exceeded the statutory limit).

William J. Barrett, Chicago, IL, Tony K. Ho, Dallas, TX, for Movant.

Dean C. Gramlich, Mark A. Berkoff, Chicago, IL, Steven B. Towbin, Winnetka, IL, Jeffrey M. Schwartz, Catherine Steege, Chicago, IL, for Respondents.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court pursuant to a Memorandum Opinion and Order from the United States District Court for the Northern District of Illinois (Honorable Matthew F. Kennelly) dated August 24, 2004 that remanded this matter for further proceedings on the Court's oral ruling on March 9, 2004, which denied the motion of JFE Steel Corporation ("JFE") for leave to file a late proof of claim pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1). The March 9, 2004 ruling denied JFE's motion on the basis that it had not met the requisite elements for permitting the filing of a late claim. The following findings of fact and conclusions of law are made pursuant to the District Court's remand order.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).

### II. FACTS AND BACKGROUND

As the parties are closely familiar with this matter, only a brief discussion of the facts is necessary here. On March 6, 2002, National Steel Corporation and its related entities (the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Prior to that time, JFE had been the Debtors' majority shareholder.[1] On April 30, 2002, the Court entered

---

1. In 1984, NKK Corporation ("NKK"), a Japanese integrated steel mill, purchased 50% of the shares of the Debtors from National Intergroup, Inc. ("NI"), the Debtors' 100% equity owner. See JFE's Mot. for Leave to File Late Claim at ¶ 8. In 1990, NKK purchased an additional 20% of the Debtors' outstanding shares from NI. Id. After an issuance of 6.9 million shares of common stock in 1995, NKK became the owner of approximately

an order setting the deadline for filing proofs of claim as August 15, 2002 (the "Bar Date"). Before the Bar Date, JFE and other entities related to or affiliated with JFE filed one or more proofs of claim asserting pre-petition claims against one or more of the Debtors. JFE's Mot. at ¶ 4. On April 21, 2003, the Court entered an order approving the sale of substantially all the assets of the Debtors to United States Steel Corporation.

On June 20, 2003, the Debtors filed their initial plan of liquidation and accompanying disclosure statement. On August 20, 2003, the Debtors filed a first amended joint plan of liquidation (the "Plan") and accompanying disclosure statement. On October 23, 2003, the Court held a hearing and confirmed the Plan. The Plan became effective on December 19, 2003.

Prior to Plan confirmation, in the Spring of 2003, counsel for the United Mine Workers of America (the "UMWA") informed the Debtors of their potential liability under the Coal Industry Retiree Health Benefit Act (the "Coal Act"), 26 U.S.C. § 9701 *et seq.* (West 2004).[2] JFE's Mot. at ¶ 22. On July 30, 2003, the UMWA contacted JFE and asserted that, based on a factual allegation in the Debtors' initial plan regarding JFE's equity ownership of the Debtors, JFE and its corporate ownership group could be

deemed a "related person" and could therefore be held jointly and severally liable for the Debtors' obligations under the Coal Act. *Id.* at ¶ 6. JFE was represented though the bankruptcy case by the law firm of Kaye Scholer LLC. On December 30, 2003, however, Barack Ferrazzano Kirschbaum Perlman & Nagelberg LLP was substituted as new counsel, and currently represents JFE.

On December 31, 2003, over sixteen months after the bar date and one day after new counsel was substituted, JFE filed the instant motion for leave to file a late claim. The claim, in the amount of "tens of millions of dollars or more" seeks contribution or indemnification from the Debtors for any claims that may arise under the Coal Act, which may be asserted against JFE as a related entity by any of the Debtors' creditors. JFE's Mot. at ¶¶ 6, 11. According to JFE, neither JFE nor its former counsel identified or was otherwise aware of the potential joint and several liability for the Debtors' obligations under the Coal Act. *Id.* at ¶ 12. JFE argues that even though it filed claims with respect to certain contractual liabilities, it did not file a proof of claim that could have stated or preserved a potential claim for any Coal Act liability. *Id.* JFE therefore contends that pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1), the Court should permit it to

---

67.6% of the Debtors. *Id.* On April 1, 2003, NKK and Kawasaki Steel Corporation, another Japanese integrated steel mill, reorganized their respective businesses, and formed a new entity, JFE Steel Corporation. *Id.* at ¶ 9.

**2.** "The Coal Act was enacted by Congress in 1992 as an attempt to ensure lifetime health benefits to covered coal industry retirees. The UMWA alleges that, in the event the original employer no longer is 'in business' at any point, the Coal Act imposes liability on a limited class of related entities, including, the UMWA contends in this case, JFE." JFE's Mot. at n. 2.

Both JFE and the Debtors have devoted significant efforts in the pleadings to the validity and extent of their potential Coal Act liabilities. "When a proof of claim may be filed and whether a filed proof of claim will be deemed allowed are two distinct issues governed by separate provisions of the Code." *In re O'Shaughnessy,* 252 B.R. 722, 737 (Bankr.N.D.Ill.2000) (*quoting In re Johnson,* 156 B.R. 557, 558 (Bankr.N.D.Ill.1993)). Consequently, the Court finds that review of the merits of any potential Coal Act liability of either the Debtors or JFE is not appropriate at this stage, and the Court will not address that liability at this time.

file a late proof of claim for Coal Act liabilities on the ground of excusable neglect. *Id.* at ¶ 13. JFE further asserts that under 11 U.S.C. § 105(a),[3] the Court has the power to grant such relief pursuant to its equitable powers. *Id.* at ¶ 14.

On February 3, 2004, the Debtors filed an objection to JFE's motion.[4] The Debtors object to the motion on the grounds that JFE's delay was not the result of excusable neglect; the delay was within JFE's reasonable control; the Debtors will be prejudiced if the late filing is allowed; and JFE's delay in asserting its claim interferes with the administration of the bankruptcy cases. The Debtors also question JFE's good faith in waiting to file the instant motion.

A hearing was held in this matter on March 9, 2004. At the hearing, neither party sought to file any additional papers or introduce any evidence. Rather, both parties stood on their respective pleadings and made supplemental oral arguments. In making its oral findings and conclusions, the Court did not articulate the full extent and rationale upon which it made its ruling. Thus, the Court's oral ruling is hereby supplemented as directed by the District Court's remand order.

### III. *APPLICABLE STANDARDS*

As a routine measure in a Chapter 11 case, the bankruptcy court frequently sets bar dates for all creditors to file their proofs of claim if the claims are unscheduled or scheduled as disputed, contingent or unliquidated. 11 U.S.C. § 1111(a); Fed. R. Bankr.P. 3003(c)(2). This bar date is essential to the effective and efficient administration of the bankruptcy case, as well as to the prompt resolution of disputes. *In re Stavriotis,* 977 F.2d 1202, 1206 (7th Cir.1992). Case administration in large bankruptcy cases such as this one is more often than not a long and complex road to travel. For this reason, "fixing a bar date is not merely a routine step, but rather it promotes efficiency in the reorganization process by promptly identifying claims that the plan must consider for the Debtor and other plan proponents." *In re Dartmoor Homes, Inc.,* 175 B.R. 659, 666 (Bankr.N.D.Ill.1994). If a scheduled creditor in a Chapter 11 case fails to timely file a proof of claim, the creditor cannot participate in plan voting, cannot receive distributions under the plan, and will not have a subordinated claim against the debtor. *Id.* at 664.

Even though courts set bar dates to expedite the administration of bankruptcy cases, there are nonetheless instances in which parties attempt to file late claims. Such filings may be permissible in situations where due process issues result from

---

**3.** Under 11 U.S.C. § 105(a), the Court may "exercise its equitable power only as a means to fulfill some specific Code provision." *In re Fesco Plastics Corp.,* 996 F.2d 152, 154 (7th Cir.1993). "By the same token, when a specific Code section addresses an issue, a court may not employ its equitable powers to achieve a result not contemplated by the Code." *Id.* In this case, Federal Rule of Bankruptcy Procedure 9006 explicitly governs when a court may extend the time to file a proof of claim. Therefore, the Court declines the invitation to utilize § 105(a) as an additional basis upon which to consider whether JFE should be allowed to file a late proof of claim.

**4.** On February 3, 2004, the Bondholders' Committee filed an objection to JFE's motion, joining in the Debtors' objection to the motion, and setting forth additional grounds for its objection. In addition, the Court notes that the NKK Litigation Trust joined the Debtors' and Bondholders' Committee's objections to JFE's motion. Mitsubishi Corporation and Marubeni Corporation also joined in the Debtors' objection. The Court has reviewed and considered all of the pleadings filed in connection with this matter.

creditors receiving improper notice. *See O'Shaughnessy*, 252 B.R. at 729–30; *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 398, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *Dartmoor*, 175 B.R. at 664. Typically, "late-filed claims, especially in the bankruptcy context, disrupt orderly discharge and should generally be barred." *O'Shaughnessy*, 252 B.R. at 731.

Bankruptcy Rule 3003 governs the time for filing a proof of claim in a Chapter 11 case, and provides that "the court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." Fed. R. Bankr.P. 3003(c)(3). The Rule further provides:

> (c)(2) Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.

Fed. R. Bankr.P. 3003(c)(2).

"After the bar date has passed, a creditor may move the bankruptcy court for an extension of time to file its proof of claim." *O'Shaughnessy*, 252 B.R. at 730; *see also* Fed. R. Bankr.P. 9006(b)(1). The extension of the time to file such proofs of claim is governed by Bankruptcy Rule 9006(b)(1), which provides in part:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of *excusable neglect.*

Fed. R. Bankr.P. 9006(b)(1) (emphasis supplied).

The bankruptcy court may, in its discretion, extend the time to file a claim where the court finds that "excusable neglect" was the reason for a party's failure to timely file a proof of claim. *Id.* The creditor seeking to have its proof of claim deemed timely bears the burden of proving "excusable neglect" by a fair preponderance of the evidence. *Dartmoor Homes*, 175 B.R. at 665. By empowering courts to extend the time to file a proof of claim under Bankruptcy Rule 9006(b)(1), Congress contemplated that courts would "be permitted, where appropriate, to accept late filings caused by inadvertence, mistake or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer*, 507 U.S. at 388, 113 S.Ct. 1489; *see also Dartmoor*, 175 B.R. at 665.

In *Pioneer*, the Supreme Court adopted a flexible interpretation of "excusable neglect," and instructed the courts to take into account equitable circumstances when making a determination as to whether a party's actions constitute "excusable neglect." 507 U.S. at 389, 113 S.Ct. 1489; *Dartmoor*, 175 B.R. at 665. The *Pioneer* court established a two-step test for determining "excusable neglect" under Bankruptcy Rule 9006. *O'Shaughnessy*, 252 B.R. at 730–31. First, the court must determine whether the movant's actions constitute neglect. *Id.* at 731. The movant may establish "neglect" by showing either (1) circumstances beyond the movant's control; or (2) the movant's inadvertence, mistake or carelessness. *Id.* (*citing Pioneer*, 507 U.S. at 387–88, 113 S.Ct.

1489). Second, once the court has made a finding of neglect, it must determine whether the neglect was excusable. *Id.*

The Supreme Court noted that the ordinary meaning of the word "neglect" is to "give little attention or respect" to a matter, or for Bankruptcy Rule 9006 purposes, "to leave undone or unattended to especially through carelessness." *Pioneer*, 507 U.S. at 388, 113 S.Ct. 1489. The word "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Id.* In order to determine whether a party's actions, or lack thereof, constitute neglect, the Supreme Court looked to the definition of the word "neglect" and found that, absent sufficient indication to the contrary, the courts properly assume that Congress intended the words in its enactments to include "their ordinary, contemporary, common meaning." *Id.*

■■ Once the existence of "neglect" is established, the court must then make an equitable determination as to whether the "neglect" should be deemed "excusable" for purposes of Bankruptcy Rule 9006. With respect to this determination, "the bankruptcy courts are necessarily entrusted with broad equitable powers to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization." *Id.* at 389, 113 S.Ct. 1489. "One ancillary rule is that inattentiveness to the litigation is not excusable." *In re Plunkett*, 82 F.3d 738, 742 (7th Cir.1996). "Missing a filing deadline because of slumber is fatal." *Id.*

■■ The determination to be made in finding whether "neglect" is "excusable" for purposes of Bankruptcy Rule 9006(b)(1) "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395, 113 S.Ct. 1489. To facilitate this analysis, the Supreme

Court set forth four factors to determine whether a finding of excusable neglect is warranted: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Id.* "These factors are nonexclusive; the test requires an equitable determination 'taking account of all relevant circumstances surrounding the party's omission.'" *O'Shaughnessy*, 252 B.R. at 731 (*quoting Pioneer*, 507 U.S. at 395, 113 S.Ct. 1489).

## IV. DISCUSSION

### A. Notice

■ In many cases where courts have allowed the filing of late claims under Bankruptcy Rule 9006(b)(1), the claimants have relied on due process issues raised with respect to whether the claimant was properly served. "Reasonable notice must be provided to known party litigants in order to ensure that they are provided with the ability and opportunity to properly prosecute or defend a claim." *In re Pettibone Corp.*, 162 B.R. 791, 808 (Bankr. N.D.Ill.1994). "The purpose of requiring a debtor to list creditors ... is to afford those creditors basic due process notice." *O'Shaughnessy*, 252 B.R. at 729. "A confirmation order cannot act to discharge and enjoin a claim unless the claimant has received adequate notice of the bankruptcy proceeding and of any claims bar dates fixed therein." *Pettibone*, 162 B.R. at 808.

In *Pioneer*, *Dartmoor Homes*, and *O'Shaughnessy*, three cases cited by both parties where the courts found improper service, the courts allowed the late-claim filings based on excusable neglect; in each of those cases, a notice issue was raised. In *Pioneer*, the court found that the claims

bar date was placed in a "peculiar and inconspicuous" manner in a notice regarding a creditors' meeting, leaving a "dramatic ambiguity" in the notification. *Pioneer*, 507 U.S. at 398, 113 S.Ct. 1489. In *Dartmoor Homes*, the debtor completely failed to notify a known creditor of the claims bar date. 175 B.R. at 664. Similarly, in *O'Shaughnessy*, the court found that the claimant was not provided with timely or reasonable notice of the claims bar date. 252 B.R. at 732.

As distinguished from those cases, in the matter at bar, there is no notice or due process issue, nor has JFE raised such an issue or claimed improper service of notice of either the pendency of the bankruptcy case or the claims bar date order. Quite the contrary, JFE has been heavily involved with the case from its inception. JFE was the majority shareholder of the Debtors, and not only was on notice of the bankruptcy case and claims bar date, but also was intimately involved in the Plan development and negotiation process, and had filed at least one separate and unrelated proof of claim before the expiration of the bar date. There is no dispute that JFE had proper notice of the claims bar date, and, therefore, the facts do not give rise to a notice or due process violation inquiry.

## B. Excusable Neglect

### 1. Whether JFE's actions constitute "neglect"

In order for the Court to grant JFE's motion, JFE must establish that its failure to file the claim at issue before the expiration of the bar date was the result of "neglect," and that in weighing the factors set forth in *Pioneer*, the equities favor a finding that any such neglect was "excusable." First, the Court finds that it was neglect for JFE to fail to file, or to include somewhere in its originally timely-filed

claims any reference to its claim against the Debtors' estates under the Coal Act. By its own admission, "[n]either JFE nor its former counsel, Kaye Scholer LLC, identified or were [sic] otherwise aware of the possible joint and several liability for certain of the Debtors' obligations pursuant to the Coal Act. As a result, although JFE filed proofs of claim in respect of certain contractual liabilities of the Debtors to JFE, JFE did not file a proof of claim that could have stated or preserved a potential claim for any Coal Act liability." JFE's Mot. at ¶ 12. Indeed, JFE's failure to identify its potential Coal Act liability amounts to inadvertence, mistake or carelessness. Nevertheless, the Court finds that the circumstances were not beyond JFE's control. JFE's close involvement in the case, coupled with the fact that JFE was a large, sophisticated steel company itself, as well as the Debtors' majority shareholder, belies any argument to the contrary. JFE simply overlooked its potential Coal Act liability as a result of carelessness, inadvertence, mistake or all of the aforementioned. Hence, the Court finds that JFE's failure to timely file this claim was a careless omission and the result of "neglect."

### 2. Whether JFE's actions were "excusable"

The Court will now discuss whether JFE's neglect was "excusable" for purposes of Bankruptcy Rule 9006(b)(3). The Court will discuss each *Pioneer* element in turn below. An analysis of the *Pioneer* factors leads this Court to conclude that JFE has failed to sustain its burden.

### a. Reason for the Delay

In the Court's analysis of the reason for the delay, it must consider not only the reason for the delay itself, but also whether the reason was beyond the reasonable

control of the claimant. JFE argues that the delay resulted from the fact that it did not know of its potential Coal Act liabilities until the Debtor decided to liquidate, information first made available to JFE on June 20, 2003, when the Debtors filed their initial plan of liquidation. According to JFE, it did not become aware of its potential liabilities under the Coal Act until July 30, 2003, when JFE itself was contacted by the UMWA.

The analysis under this element is confounded by a number of factors. Most significant is JFE's relationship with the Debtors as their largest shareholder. Then, there are the undisputed facts that JFE has been involved in these cases from the beginning, and that JFE received proper notice of the claims bar date. In addition, JFE filed at least one other proof of claim in this matter before the expiration of the bar date. JFE is a sophisticated steel company and was represented by competent and experienced counsel throughout the pendency of these cases. It is untenable for this Court to find that JFE, intimately familiar with the Debtors' businesses and the steel industry as a whole, did not recognize the potential for liability under the Coal Act. Further, JFE was at the Plan confirmation hearing on October 23, 2003, and it did not object to either the Plan or the disclosure statement, even though it was given full opportunity to do so.

 JFE attempts to make much of the Debtors' December 23, 2003 renunciation of any Coal Act liability. Even if the Court were to find that the Debtors were in some part at fault for the filing delay, the Court holds JFE responsible for the acts and omissions of its chosen counsel. *See Pioneer*, 507 U.S. at 397, 113 S.Ct. 1489. "Where the responsibility for delay is that of claimant's counsel, that responsibility must be attributed to the claim-

ant. . . ." *Brooks v. Kmart Corp. (In re Kmart)*, 315 B.R. 718, 723 (N.D.Ill.2004). The Court does not question that JFE's new counsel filed the instant motion in the most timely manner possible—one day after the notice of substitution was filed. However, for purposes of the *Pioneer* analysis, the Court must look to JFE's reason for the delay as a whole, and will therefore consider the behavior of JFE and its former and current counsel.

 Regardless of whether and when the Debtors became aware of their potential Coal Act liabilities, and regardless of whether and when the Debtors repudiated any such liability, it was the responsibility of JFE to explore and identify any potential claims it may have had against the Debtors. JFE has misplaced this responsibility: It is not the duty of the Debtors to make JFE or any of its creditors aware of every potential claim they may have against the Debtors. To the contrary, it was JFE's responsibility to explore, investigate and file a proof of claim against the Debtors, not the other way around. The Debtors' actions or inactions are irrelevant. JFE's problem here is a "self-inflicted" wound, and it has no one to blame but itself for this predicament. *See In re Outboard Marine Corp.*, 386 F.3d 824, 828–29 (7th Cir.2004). Accordingly, the Court finds that the reason for JFE's delay was well within its reasonable control. Any argument to the contrary is strongly outweighed by the facts above.

### b. Length of the Delay

 No formula exists to calculate precisely when a delay is simply too long to be considered "excusable" within the excusable neglect analysis. It is an equitable determination made on a case-by-case basis on the evidence presented. "There is no specific length of time after which a delay would be inexcusable; rather, the

length of the delay must be balanced with the various other factors." *Langel v. Kmart Corp. (In re Kmart)*, No. 03C7091, 2004 WL 756607, at *3 (N.D.Ill. Feb.27, 2004). "In some cases, a claim that is six months late will create substantial prejudice and interference, and in others it would create none." *Manousoff v. Macy's Northeast, Inc. (In re R.H. Macy & Co., Inc.)*, 166 B.R. 799, 802 (S.D.N.Y.1994).

JFE filed the instant motion sixteen months after the claims bar date. Even after July 2003, the time when JFE claims to have first learned of its potential Coal Act liability, it waited until December 31, 2003, another five months, to file the motion at bar. A sixteen-month delay constitutes a lengthy amount of time by most standards in the bankruptcy context. Even if JFE did not become aware of the potential liability until July 2003, the delay between its learning of the potential liability and its filing of the instant motion, five months, is still disproportionate to similar cases. *See Pioneer*, 507 U.S. at 384, 113 S.Ct. 1489 (20 days after bar date); *Dartmoor Homes*, 175 B.R. at 662 (just over two weeks after the bar date); *O'Shaughnessy*, 252 B.R. at 729 (three months after plan confirmation). JFE has provided no explanation as to why it waited an additional five months to file the claim subsequent to its learning of its potential Coal Act liability. The Court cannot and will not ignore this delay. There were at least five months during which JFE was aware of the potential Coal Act liability, and yet it sat on its hands and did nothing.

The sixteen-month delay in this case is exceedingly long, is disproportionate to similar cases, and would have tremendously adverse effects on the distributions to other creditors under the Plan. Considering the impact this delay would potentially have upon judicial proceedings, the Court

finds this factor weighs heavily in favor of the Debtors. At this point, the Plan has not only been confirmed, but it has been in effect since December 2003. There are claims being reviewed and resolved, and distributions being made. To go back at the eleventh hour would undoubtedly have a grossly damaging effect upon the judicial proceedings and the administration of the estates, which brings the Court to the next *Pioneer* factor.

**c. Prejudice to the Debtors**

The crux of JFE's argument with respect to this element is that the administration of the Debtors' estates is by no means near completion and that because the Plan was already confirmed at the time the motion was made, granting JFE an extension of time will not disrupt the Debtors' liquidation efforts. JFE further argues that the Debtors were aware of the potential liabilities under the Coal Act as of the date of Plan confirmation.

 Even though the administration of the Debtors' estates is still in process, allowing the claim at this point will largely impact the administration. "Prejudice from a late-filed claim is greater when the creditor's delay extends into the period in which the plan of reorganization is being 'negotiated, drafted, filed or confirmed.'" *Brooks v. Kmart Corp.*, 315 B.R. at 722. "If individual creditors were permitted to postpone indefinitely the effect of a bar order so long as adversary proceedings were pending, the institutional means of ensuring the sound administration of the bankruptcy estate would be undermined." *In re Kmart*, 381 F.3d 709, 715 (7th Cir. 2004).

As discussed previously, the claims bar date in a Chapter 11 bankruptcy case plays an integral role in the administration of the case. If the Court were to grant JFE leave to file its claim, both the case

administration as a whole and the claims resolution process in particular would be dramatically affected. The Plan has been in effect since December 19, 2003. It was negotiated and agreed to based largely on the creditors' reliance on the economic models developed at that time. The claim here is complex and contingent, and its resolution would require substantial efforts on the part of the Debtors at an extremely late stage in their liquidation. To allow the filing now would prejudice the Debtors and cause them to begin another extensive claim litigation process.

More importantly, the amount of the claim here strongly outweighs any arguments in JFE's favor. Even though the allowance of any late claim would have an effect on the administration of the Plan, the magnitude of the claim at bar, coupled with the sizable length of the delay, would have catastrophic effects on the administration of these cases. As JFE stated, the claim amount "is in the tens of millions of dollars or more." JFE's Mot. at ¶ 6. To ask the Court to fit such an extremely large claim into the claims universe here is well beyond any practicality as well as well dissimilar to other cases where late claims have been allowed. A claim in any amount would disrupt the distributions under the Plan; a claim in an amount in the "tens of millions of dollars or more" would severely disrupt and diminish the distributions to the creditors under the Plan. Even though these bankruptcy cases are well into the billions of dollars, JFE's claim is not a *de minimis* claim that would have no effect on the payout to the creditors that filed claims in a timely manner. *See Outboard Marine Corp.*, 386 F.3d at 828–29. Moreover, payment on claims is already in process, and to disturb the Plan now would have serious effects on those distributions and the overall financial picture upon which the Debtors' liquidation is premised.

The Court agrees with the Debtors that to allow the claim would require considerable analysis and time, and would severely prejudice the Debtors and their ability to effectively and efficiently review and dispose of claims and make distributions under the Plan. Given that under *Pioneer* it is JFE's burden to prove that the allowance of the late-filed claim will not prejudice the Debtors, the Court finds that this factor weighs in favor of the Debtors, and allowing the claim at this point would unduly prejudice them.

### d. Good Faith of JFE

JFE argues that it acted in good faith, and its decision to file a late claim was the result of the Debtors' changed position with respect to their potential Coal Act liabilities. While the Court finds that JFE acted with neglect in its failures to timely file its claim and at least file the claim when it first learned of its potential Coal Act liabilities, the Court finds that no evidence has been presented to show that JFE did not act in good faith.

The focus of the analysis under this element is on JFE's actions. JFE's allegations that the Debtors acted in bad faith do not establish whether JFE itself acted in good faith. As stated *supra,* JFE admits that neither it nor its former counsel was aware of any potential Coal Act liability and, thus, it did not timely file a proof of claim to preserve any related potential claim. Again, relying on the Debtors' actions, JFE contends that the Debtors were negligent in their representations to the UMWA and the Court, and that by repudiating their Coal Act liabilities shortly after amending their liquidation Plan, the Debtors acted in bad faith. Any such allegations reflect on the actions of the Debtors, not JFE. The Court finds that no evidence was presented by the parties to establish whether or not JFE acted in good faith,

and therefore finds this element inconclusive.

In conclusion, the Court finds that the negative impact on the Debtors' estates and the other creditors of allowing the late filing of the claim greatly outweighs the arguments in favor of JFE. Taking all the *Pioneer* factors into account, the Court finds that on balance, the equities weigh in favor of the Debtors and against JFE. Thus, the Court must deny the motion on this basis.

The Bondholders' Committee makes two additional arguments against allowing JFE's late-filed claim. The Court will address each in turn.

## C. Res Judicata

First, the Bondholders' Committee contends that the confirmation order entered by the Court on October 23, 2003 bars the filing of this untimely proof of claim. "Under the Bankruptcy Code, a proof of claim must be presented to the Bankruptcy Court for administration, or be lost when a plan of reorganization is confirmed." *O'Shaughnessy*, 252 B.R. at 731–32. Plan confirmation operates as *res judicata* to bar the allowance of any late-filed claims. *Id.* at 732. While this generally holds true, there are instances in which a claim may be allowed even though it is filed after the expiration of the bar date and post-confirmation. Bankruptcy Rule 9006(b)(1) indicates that Congress intended there to be instances when the time must be enlarged to ensure an equitable end, such as cases in which due process rights are in issue. Bankruptcy Rule 9006 and the foundations of equity militate that there are instances when late-claims may be allowed, and to disallow all late-filed claims would wholly undermine the very purpose behind Bankruptcy Rule 9006. The Court disagrees with the argument that the Plan confirmation order bars any

late-filed claim even if deemed to have resulted from "excusable neglect" under *Pioneer* and Bankruptcy Rule 9006(b)(1).

## D. Claim Amendment

Finally, the Bondholders' Committee raised in its objection the argument that JFE's late claim cannot be considered an amendment pursuant to Federal Rule of Civil Procedure 15, made applicable here by Federal Rule of Bankruptcy Procedure 7015, to its timely-filed claims. The Court agrees. In its oral ruling on March 9, 2004, the Court stated that the "claim by JFE is an entirely new claim, unliquidated, disputed, asserted to be contingent, but it's definitely a new animal and there's really no dispute about that." Tr. March 9, 2004 at 18. JFE is attempting to file a new claim, one that did not arise out of the same transaction or occurrence of another of JFE's proofs of claim. *See Stavriotis*, 977 F.2d at 1206 n. 4. By its own admissions, JFE acknowledges that even though it filed claims with respect to certain contractual liabilities, those claims did not reference any potential Coal Act liability. Therefore, the Court finds this argument is without merit.

## V. CONCLUSION

For the foregoing reasons, the Court denies JFE's motion for leave to file a late claim pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1).

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.