Present:  All the Justices

POLLARD & BAGBY, INC.

v.  Record No. 990137   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        November 5, 1999
PIERCE ARROW, L.L.C., III, ET AL.


              FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                         Theodore J. Markow, Judge


     In this appeal, we determine whether the new owner of an

apartment building is obligated by contract to pay commissions

to the agent who procured tenants for the former owner, for as

long as those tenants continue to reside in the leased premises.

     The following facts are not in dispute.  Pollard & Bagby,

Inc. (Pollard) acted as the leasing agent for Willard R.

Simmons, the former owner of an apartment building located on

Stuart Avenue in Richmond (the property).  As Simmons's agent,

Pollard procured tenants for the property.  Simmons, Pollard,

and each tenant procured by Pollard entered into a written lease

agreement.  Each lease was identical in form and contained the

following provisions in Paragraph 15(A):

        Lessor [Simmons] has agreed and does hereby agree that
        in consideration of Agent's [Pollard's] services
        rendered in procuring this Lease, Lessor will pay to
        Agent a commission of 6% . . . per month of the rental
        received from Lessee during the term of this lease and
        during any renewal and extension thereof or during the
        term of any new lease, or by the holding over of the
        Lessee with the Lessor's permission respecting the
        premises between Lessor and Lessee.  No sale, transfer
        or assignment by Lessor shall affect Agent's right to

receive commissions, provided that in the event Lessor sells the premises, then upon Lessor's furnishing Agent with an agreement signed by the purchaser assuming Lessor's obligation to the Agent under this Lease, Agent will release the original Lessor from any further obligation to Agent hereunder.

In June 1996, Simmons sold the property to Pierce Arrow, L.L.C., III (Pierce).[1] Simmons did not obtain from Pollard a release from further obligations under the leases, as permitted by Paragraph 15(A). After Pierce acquired the property, it retained the services of a different leasing agent, but continued to pay the commissions required under Paragraph 15(A) to Pollard until the term of each existing lease expired. As each lease expired, Pierce entered into a new lease with the same tenant and stopped paying commissions to Pollard on the rent paid by that tenant under the new lease.

Pollard filed a declaratory judgment action against Pierce and Simmons, seeking a declaration that under the terms of the leases, Pollard is entitled to continue to receive commissions on rents paid by any tenant of the property who initially was procured by Pollard. Pierce and Simmons alleged in defense that their obligation to pay commissions to Pollard under each lease

---

[1]Barbara C. Simmons, the personal representative of the estate of Willard R. Simmons, was named as a defendant in this action because Willard R. Simmons died several months after the sale of the property. The decedent and the personal representative of his estate will be referred to collectively as "Simmons" in this opinion.

ended when that tenant's lease with Simmons expired and the tenant entered into a new lease with Pierce.

The parties stipulated to the relevant facts and filed cross motions for summary judgment. After determining that there were no disputed issues of fact, the trial court ruled that the obligation to pay commissions "applies only to leases between a tenant procured by [Pollard] and Mr. Simmons." The court held that the term "new lease" as used in Paragraph 15(A) did not include leases executed between the tenant and a new lessor, and that "[t]he provision for 'new leases' is limited to those new leases that are signed by the lessee and Mr. Simmons." The court concluded that the "contract does not entitle [Pollard] to any commissions on leases where Mr. Simmons is not the lessor." The court granted summary judgment in favor of Pierce and Simmons. We awarded Pollard this appeal.

Pollard argues that Simmons assigned the leases to Pierce and, thus, that Pierce "stepped into the shoes" of Simmons and acquired Simmons's rights, duties, and obligations under the leases. Pollard contends that the trial court erred in granting summary judgment to Pierce since the plain terms of Paragraph 15(A) extend the lessor's obligation to pay commissions to Pollard to "new leases" executed by tenants procured by Pollard. Pollard further asserts that Simmons, as assignor, remains jointly liable for payment of the commissions since Simmons did

3

not obtain a release from Pierce as permitted by Paragraph 15(A).

In response, Pierce and Simmons contend that the plain terms of the leases do not grant Pollard the right to continue to receive commissions after a new owner of the property executes a new lease with an existing tenant. In the alternative, they argue that the lease provisions are ambiguous and, therefore, must be construed against the drafter, Pollard, and in favor of Pierce and Simmons.

We begin our analysis by noting that the trial court held that there was an assignment of the leases from Simmons to Pierce when Simmons conveyed the property.[2] Since Pierce and Simmons have not asserted cross-error to this ruling, it became the law of the case and is not before us in this appeal. See Hill v. Hill, 227 Va. 569, 578, 318 S.E.2d 292, 297 (1984); Twin Lakes Mfg. Co. v. Coffey, 222 Va. 467, 474, 281 S.E.2d 864, 867 (1981); Searles v. Gordon, 156 Va. 289, 294, 157 S.E.2d 759, 761 (1931).

It is well settled that an assignee of a contract obtains his rights from the assignor and, thus, "stands in the shoes" of the assignor and acquires the same rights and liabilities as if he had been an original party to the contract. See Union

---

[2]There is no verification or documentation of any assignment in this record.

4

Recovery Ltd. Partnership v. Horton, 252 Va. 418, 423, 477 S.E.2d 521, 523 (1996); Fidelity & Cas. Co. of N.Y. v. First Nat'l Exchange Bank of Va., 213 Va. 531, 538, 193 S.E.2d 678, 684 (1973); National Bank & Trust Co. at Charlottesville v. Castle, 196 Va. 686, 692-93, 85 S.E.2d 228, 232 (1955). Therefore, under the assignment from Simmons, Pierce acquired the rights and liabilities of the lessor as set forth in the leases at issue.

In determining the extent of the lessor's duty to pay commissions under the leases, we consider the plain meaning of the language employed in the contract. See Waynesboro Village, L.L.C. v. BMC Properties, 255 Va. 75, 79-80, 496 S.E.2d 64, 67 (1998); Chawla v. BurgerBusters, Inc., 255 Va. 616, 620, 499 S.E.2d 829, 831 (1998); Amos v. Coffey, 228 Va. 88, 92-93, 320 S.E.2d 335, 337 (1984). When a contract's terms are clear and unambiguous, the interpretation of those terms presents a question of law. Gordonsville Energy, L.P. v. Virginia Elec. & Power Co., 257 Va. 344, 352-53, 512 S.E.2d 811, 816 (1999); D.C. McClain, Inc. v. Arlington County, 249 Va. 131, 135, 452 S.E.2d 659, 662 (1995). The issue whether a particular writing is ambiguous is also a question of law. Westmoreland-LG&E Partners v. Virginia Elec. & Power Co., 254 Va. 1, 10, 486 S.E.2d 289, 294 (1997); Tuomala v. Regent Univ., 252 Va. 368, 374, 477 S.E.2d 501, 505 (1996). On appeal, we are not bound by the

5

trial court's determination of these questions of law, and we are afforded the same opportunity as the trial court to consider the contract provisions.  Gordonsville Energy, L.P., 257 Va. at 353, 512 S.E.2d at 816; Westmoreland-LG&E Partners, 254 Va. at 10, 486 S.E.2d at 294; Langman v. Alumni Ass'n of the Univ. of Virginia, 247 Va. 491, 498, 442 S.E.2d 669, 674 (1994).

We conclude that Paragraph 15(A) of the leases is unambiguous and that the plain meaning of its terms obligate the lessor to pay commissions to Pollard on all rental payments received from tenants procured by Pollard.  Under that language, this obligation continues during the term of the original lease and "during any renewal and extension thereof or during the term of any new lease."  Further, "[n]o sale, transfer or assignment . . . shall affect" Pollard's right to receive commissions.

By this language, Simmons is obligated to pay commissions as long as a tenant procured by Pollard continues to be a tenant of the leased premises.  This obligation remains unchanged if an existing tenant executes a new lease for the leased premises. Since Simmons failed to obtain a release from this obligation upon sale of the property, as permitted by Paragraph 15(A), he remains liable for the performance of that obligation because the assignment had no effect on Simmons's privity of contract with Pollard.  See Cavalier Square Ltd. Partnership v. Virginia Alcoholic Beverage Control Bd., 246 Va. 227, 231, 435 S.E.2d

6

392, 395 (1993); Jones v. Dokos Enterprises, 233 Va. 555, 557, 357 S.E.2d 203, 205 (1987). Pierce, as an assignee "standing in the shoes" of Simmons, also is liable for Simmons's obligation to pay commissions under the leases. See Union Recovery Ltd. Partnership, 252 Va. at 423, 477 S.E.2d at 523; National Bank & Trust Co. at Charlottesville, 196 Va. at 692-93, 85 S.E.2d at 232.

Pierce and Simmons argue, however, that the above lease provisions concerning commissions due Pollard did not continue beyond the sale of the property, because the purchase agreement between Simmons and Pierce provided that the property would be conveyed "free and clear of any management agreements at settlement." We find no merit in this contention since the plain terms of the leases provided that the commissions were paid "in consideration of [Pollard's] services rendered in procuring this [l]ease," and not as payment for management services. (Emphasis added.)

For these reasons, we will reverse the trial court's judgment in favor of Simmons and Pierce, enter judgment in favor of Pollard, and remand the case for further proceedings to determine damages, and any attorney's fees and costs, due Pollard under the leases.

                                        Reversed and remanded.

7