UNPUBLISHED

# UNITED STATES COURT OF APPEALS

### FOR THE FOURTH CIRCUIT

WOMEN IN MILITARY SERVICE FOR
AMERICA MEMORIAL FOUNDATION,
INCORPORATED,
*Plaintiff,*

and

MONTGOMERY MUTUAL INSURANCE
COMPANY,
*Third Party Defendant-
Appellee,*

v.

HARTFORD FIRE INSURANCE COMPANY,
*Defendant-Appellant,*

and

THE CLARK CONSTRUCTION GROUP,
INCORPORATED,
*Defendant,*

and

KALOS CONSTRUCTION COMPANY,
INCORPORATED; WEISS/MANFREDI
ARCHITECTS; PROFESSIONAL
RESTORATION, INCORPORATED,
*Third Party Defendants.*

No. 01-1081

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge;
Albert V. Bryan, Jr., Senior District Judge.
(CA-98-916-A)

Argued: September 25, 2001

Decided: October 30, 2001

Before MOTZ and KING, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Donald Lee Speidel, NILES, BARTON & WILMER, L.L.P., Baltimore, Maryland, for Appellant. Stephen Anthony Horvath, TRICHILO, BANCROFT, MCGAVIN, HORVATH & JUDKINS, P.C., Fairfax, Virginia, for Appellee. **ON BRIEF:** Craig D. Roswell, NILES, BARTON & WILMER, L.L.P., Baltimore, Maryland, for Appellant.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

In this insurance coverage dispute, Hartford Fire Insurance Company (Hartford) appeals the district court's entry of judgment against it and in favor of Montgomery Mutual Insurance Company (Montgomery Mutual), as assignee of Women in Military Service for America Memorial Foundation, Incorporated (WIMSA). We affirm.

I

WIMSA was formed for the purpose of establishing a memorial (the Memorial) at the Arlington National Cemetery to honor women in military service. Pursuant to a permit issued to WIMSA by the

National Park Service, WIMSA was permitted to proceed with construction of the Memorial. The permit required WIMSA to be responsible for management, performance, use, and safety within the area involved until the work was completed, inspected, and accepted, and thereafter as long as the Memorial was in place. WIMSA was responsible for all damages to lands or other property of the United States caused by WIMSA or by WIMSA's employees, contractors, or employees of the contractors, and for costs and repairs for any structures, facilities, sod, soils, or landscape vegetation damaged by the work.

On March 6, 1996, WIMSA entered into a contract with Clark Construction Group, Incorporated (Clark Construction) wherein Clark Construction agreed to construct the Memorial. Thereafter, Clark Construction obtained two insurance policies from Hartford, a builder's risk policy (the Builder's Risk Policy) and a comprehensive general liability policy.

The Builder's Risk Policy covered losses to "Covered Property," which is defined by the Builder's Risk Policy in relevant part as "[s]tructures . . ., fixtures, equipment, machinery and similar property which will become a permanent part" of the Memorial. (J.A. 276). The Builder's Risk Policy also contained a covered property exclusion which stated that "Covered Property" did not include property that would "not become a permanent part of the structure(s) described in the Declarations or Schedule unless the replacement cost of such property is included in the contract price and reported to [Hartford]." (J.A. 277).

In connection with its work on the Memorial, Clark Construction hired Kalos Construction Company, Incorporated (Kalos Construction) as a subcontractor to perform excavation work. Thereafter, Kalos Construction obtained a commercial general liability policy from Montgomery Mutual.[1]

---

[1]The commercial general liability policy issued to Kalos Construction listed Clark Construction and WIMSA as additional insureds. Montgomery Mutual did not issue a builder's risk policy to Kalos Construction.

The Memorial consisted of a semi-circular building around an open circular plaza with a large fountain. Preexisting pylons completed the plaza circle. The pylons are approximately sixty feet in height and are made of stone-clad concrete.

During construction of the Memorial, Kalos Construction excavated a trench near one of the pylons. The weight of the pylon either collapsed or compromised the trench and the pylon collapsed, damaging the pylon and an urn affixed to the pylon.

WIMSA called on Clark Construction and Hartford to cover the damages, but Hartford denied coverage. As a result, WIMSA sued Clark Construction and Hartford in the United States District Court for the Eastern District of Virginia, and Montgomery Mutual was brought in as a third-party defendant. Numerous claims, counterclaims, and crossclaims were filed by the various parties.

On September 28, 1998, pursuant to Federal Rule of Civil Procedure 12(b)(6), Hartford moved to dismiss WIMSA's claim: (1) for a declaratory judgment that Hartford had an obligation to provide coverage for the loss associated with the pylon accident; (2) for recovery under the theory that Hartford breached its obligations to WIMSA under the Builder's Risk Policy; and (3) for recovery under the theory that Hartford exercised bad faith when it failed to provide coverage for the loss associated with the pylon accident. On October 29, 1998, the district court granted Hartford's motion to dismiss these three claims, reasoning that there was no indication that the damaged pylon was to become a permanent part of the Memorial or that Clark Construction or WIMSA "ever disclosed to Hartford the replacement cost of the Pylon to include such cost in the contract." (J.A. 94). The district court recognized that there might be ambiguities in the Builder's Risk Policy, but declined to address them because it found that the plain and unambiguous language of the covered property exclusion made it unnecessary. Accordingly, the district court entered judgment in favor of Hartford.

Thereafter, Montgomery Mutual entered into a settlement agreement with WIMSA, Clark Construction, and Kalos Construction. Under the terms of the settlement agreement, WIMSA, Clark Construction, and Kalos Construction agreed to drop their claims against

Montgomery Mutual in exchange for WIMSA's assignment of its rights against Hartford to Montgomery Mutual and for Montgomery Mutual's agreement to fund the repairs to the Memorial.[2] Montgomery Mutual opted to pursue this route because, according to Montgomery Mutual, its duty to defend was broader than its duty to indemnify and because it was confronted with paying the large legal expenses of WIMSA, Clark Construction, and Kalos Construction.

After the execution of the settlement agreement, the parties entered into a "Stipulation and Consent Order to Dismiss Various Claims Among and Between the Parties." (J.A. 96). This resulted in the dismissal of most of the claims in the litigation, essentially leaving only the three claims dismissed by the district court in its October 29, 1998 order.

Stepping into WIMSA's shoes, Montgomery Mutual appealed the district court's grant of Hartford's motion to dismiss. On appeal, we vacated the district court's judgment, reasoning that various factual issues needed to be resolved by the district court concerning whether the loss associated with the pylon accident was covered by the Builder's Risk Policy. *Women in Military Serv. for Am. Mem'l Found., Inc. v. Hartford Fire Ins. Co.*, No. 99-1670, 2000 WL 719691, at *3 (4th Cir. May 23, 2000) (unpublished).

On remand, Hartford contended that, even if the damaged pylon met the definition of "Covered Property" under the Builder's Risk Policy, Hartford had no duty to pay under the Builder's Risk Policy

---

[2]The record reflects that Montgomery Mutual issued one check to Clark Construction and two checks to Kalos Construction for the repairs to the Memorial; these checks totaled $616,755. After Montgomery Mutual issued the checks to Clark Construction and Kalos Construction for restoration of the Memorial, the subcontractor responsible for repairing the urn declared bankruptcy. Because the bankrupt subcontractor was the low bidder on the urn subcontract, Kalos Construction will incur additional costs to repair the urn, which costs are estimated to be between $20,000 and $30,000. As part of its obligations under the settlement agreement, Montgomery Mutual intends to cover these additional costs associated with repairing the urn, once the exact cost of repair is determined.

because Montgomery Mutual's payments to Clark Construction and Kalos Construction constituted other insurance coverage and further constituted a loss made good by others. In making this contention, Hartford relied on the following two provisions of the Builder's Risk Policy:

> 5.   Loss Payment
>
> We will pay or make good any "loss" covered under this Coverage Part within 30 days after:
>
> >   a.   We reach agreement with you; or
> >
> >   b.   The entry of final judgment.
>
> We will not be liable for any part of a "loss" that has been paid or made good by others.
>
> 6.   Other Insurance
>
> If you have any other insurance covering the same "loss" as the insurance under this Coverage Part, we will pay only the excess over what you have received from other insurance.

(J.A. 289).

On remand and following a bench trial, the district court determined that the damage to the pylon met the Builder's Risk Policy's definition of "Covered Property" and awarded judgment to Montgomery Mutual in the amount of $616,755 (the total amount paid by Montgomery Mutual to Clark Construction and Kalos Construction), and further found that Hartford would be liable for the additional costs associated with the repairs to the urn. In rejecting Hartford's argument that Montgomery Mutual's payments to Clark Construction and Kalos Construction constituted other insurance coverage and further constituted a loss made good by others, the district court reasoned:

> The only other question is whether the limitation for other insurance and being paid by others in the absence of a loss would preclude the plaintiff from recovering.

There was no other insurance here within the meaning of this limitation. The settlement was paid in exchange for an assignment, and the plaintiff's position that there was no coverage, but that settlement was made, not only for the assignment, but for the limitation of exposure to other, greater expenses in defending the law suit, it seems to me, precludes this being considered other insurance. And the claim that it was paid by others, fails, it seems to me, when you consider that this was an assignment, and the payment by others was in exchange for the assignment. And, but for that payment, there would clearly have been a loss by the Women in the Military, and that's whose claim we are asserting or considering here today.

(J.A. 272).

Hartford noted a timely appeal.

## II

On appeal, Hartford makes two principal arguments. The first argument is that the loss associated with the pylon accident was covered by other insurance, *i.e.*, Montgomery Mutual's commercial general liability policy, and, therefore, the Builder's Risk Policy's other insurance exclusion precludes coverage. The second argument is that, even if the loss associated with the pylon accident was not covered by other insurance, the loss associated with the pylon accident was made good by others, *i.e.*, by Montgomery Mutual's payments to Clark Construction and Kalos Construction, and, therefore, the loss made good by others exclusion precludes coverage. Before we address these arguments, we shall briefly address the choice of law issue raised by the parties.

In a diversity case, a United States District Court sitting in Virginia applies Virginia's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). This principle has been settled since *Klaxon Co.*, which extended the rule of *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), to choice of law questions. *Klaxon Co.*, 313 U.S. at 496. Under Virginia law, questions concerning the validity, effect, and interpretation of a contract are resolved according to the principle

of *lex loci contractus*, the law of the state where the contract was made controls. *Woodson v. Celina Mut. Ins. Co.*, 177 S.E.2d 610, 613 (Va. 1970). Under Virginia law, a contract is made when the last act necessary to complete the contract is performed, and, in the context of an insurance policy, the last act is the delivery of the policy to the insured. *Metcalfe Bros., Inc. v. Am. Mut. Liab. Ins. Co.*, 484 F. Supp. 826, 829 (W.D. Va. 1980); *see also Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993). In this case, Montgomery Mutual contends the Builder's Risk Policy was delivered in Virginia; in contrast, Hartford argues the Builder's Risk Policy was delivered in Maryland.

We need not decide the choice of law issue raised by the parties because, as explained below, under either Virginia or Maryland law, the district court correctly ruled in favor of Montgomery Mutual.[3] Under Virginia law, insurance policies are contacts whose terms are construed in accordance with the general principles applicable to all contracts. *Dairyland Ins. Co. v. Douthat*, 449 S.E.2d 799, 801 (Va. 1994). When the terms of an insurance policy are clear and unambiguous, we are instructed by the Supreme Court of Virginia to give the terms of the insurance policy their ordinary meaning and to enforce the policy as written. *Osborne v. Nat'l Union Fire Ins. Co.*, 465 S.E.2d 835, 837 (Va. 1996). Under Maryland law, we are instructed by the Maryland Court of Appeals to accord the words of an insurance policy their "usual, ordinary and accepted meaning unless there is evidence that the parties intended to employ [them] in a special or technical sense." *Cheney v. Bell Nat'l Life Ins. Co.*, 556 A.2d 1135, 1138 (Md. 1989). In addition, following the rules applicable to the construction of contracts generally, the intention of the parties is to be ascertained if reasonably possible from the insurance policy as a whole. *Id.*

A

Hartford argues that the loss associated with the pylon accident was covered by Montgomery Mutual's commercial general liability policy and, therefore, the Builder's Risk Policy's other insurance exclusion

---

[3]Because Montgomery Mutual prevailed by applying either Virginia or Maryland law, the district court did not resolve the choice of law issue.

precludes coverage because Montgomery Mutual funded the repairs to the Memorial. This argument is without merit.

The record does not support the conclusion that there was "other insurance covering the same 'loss.'" (J.A. 289). In fact, the relevant evidence in the record suggests otherwise. According to Gerard Heim, a field manager for Montgomery Mutual, the pylon accident was not covered under Montgomery Mutual's commercial general liability policy because the pylon accident was not an occurrence and it was excluded under the policy. Accordingly, under the clear and unambiguous language of the Builder's Risk Policy, in the absence of "other insurance covering the same 'loss,'" *id.*, the "other insurance" exclusion does not come into play.[4]

B

Hartford also argues that, because Montgomery Mutual made the payments to Clark Construction and Kalos Construction to repair the Memorial, its obligation to provide coverage was extinguished because the "loss" was "made good by others." *Id.* We disagree.

When there is an assignment of contract rights, the assignee obtains its rights from the assignor and, thus, stands in the shoes of the assignor and acquires the same rights and liabilities as if it had been an original party to the contract. *Pollard & Bagby, Inc. v. Pierce Arrow, L.L.C.*, 521 S.E.2d 761, 763 (Va. 1999); *Motor Vehicle Sec. Fund v. All Coverage Underwriters, Inc.*, 325 A.2d 115, 131 (Md. Ct. Spec. App. 1974). At the time of the assignment, WIMSA had a right to proceed against Hartford and an obligation to the National Park Service to repair the pylon and urn. As a result of the assignment, Montgomery Mutual obtained WIMSA's right to proceed against Hartford and the obligations owed to the National Park Service to repair the pylon and urn. Consequently, Montgomery Mutual was entitled, as WIMSA's assignee, to proceed against Hartford, which it did.

---

[4]Interestingly, Hartford never sought to introduce into evidence a copy of Montgomery Mutual's commercial general liability policy.

Reduced to its essence, Hartford's argument is that, because consideration was paid by Montgomery Mutual for the assignment, the loss was made good. This argument misses the mark for the simple reason that, once Montgomery Mutual stepped into WIMSA's shoes, Montgomery Mutual was entitled to exercise WIMSA's rights to fund the repairs and to proceed against Hartford. *Cf. Med. Mut. Liab. Ins. Soc'y of Md. v. Evans*, 622 A.2d 103, 116-18 (Md. 1993) (upholding physician's assignment of his bad faith failure to settle claim against his insurer to plaintiff/patient, where the physician made the assignment in exchange for plaintiff/patient's agreement not to pursue or collect the unpaid portion of a $2.5 million judgment against the physician); *Gray v. Grain Dealers Mut. Ins. Co.*, 871 F.2d 1128, 1132-34 (D.C. Cir. 1989) (holding that accident victim's release of insured from obligation to satisfy judgment in exchange for insured's assignment of cause of action against insurer for failing to settle did not nullify the assignment so as to preclude accident victim's recovery against insurer).

### III

For the reasons stated herein, the judgment of the district court is affirmed.[5]

*AFFIRMED*

---

[5]We have reviewed Hartford's argument that it is not responsible for the additional costs associated with repairing the urn and find Hartford's argument to be without merit.