### In the matter of XPEDIOR INCORPORATED et al., Debtor.

### No. 01 B 14424.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

April 22, 2005.

Matthew Gensburg, Chicago, IL, for Debtor.

## MEMORANDUM OPINION ON ePLUS' MOTION FOR LEAVE TO AMEND OR, IN THE ALTERNATIVE, FILE A LATE CLAIM

JACK B. SCHMETTERER, Bankruptcy Judge.

This matter relates to the Chapter 11 bankruptcy case of Xpedior Inc. ("Xpedior" or "Debtor"), filed April 20, 2001.

Xpedior and ePlus Group, Inc. ("ePlus") executed a pre-petition lease of computer equipment ("leased equipment"). On September 10, 2001, ePlus filed a bankruptcy claim in the amount of $756,689.54 seeking to recover unpaid rent for the leased equipment. An Order had earlier been entered setting a claims bar date of September 10, 2001. Subsequent to that date, ePlus alleges it discovered that some of the leased equipment was missing. On November 9, 2004 ePlus moved to amend its claim to include damages for the missing leased equipment. Debtor objected. The parties filed briefs and exhibits but no evidence hearing has yet been set or requested.

After consideration of the memorandum, exhibits, and applicable law it is concluded that there are factual disputes regarding the motion (here treated as a contested proceeding under Rule 9014 Fed.R.Bankr. P.) to be resolved by evidence before it can be decided. This matter therefore will be set for evidence hearing to address the issues discussed below.

### BACKGROUND

The background facts are not in dispute.

On July 10, 2000 Xpedior and ePlus entered into a leasing agreement and schedules ("Lease") whereby ePlus leased computer equipment to Xpedior. The lease provided that upon the occurrence of an event of default ePlus may declare immediately due and payable and recover from the Debtor as liquidated damages: (a) a casualty value based on a formula specified in an accompanying Schedule to the lease; (b) all rent due and payable on or before the date of default; and (c) costs, fees, expenses and interest.

The lease further provided that in the event any leased equipment was destroyed, damaged beyond repair, lost, or stolen the Debtor would pay an amount equal to the casualty value.

ePlus financed the lease by assigning its rights to a portion of the lease payments to

a non-recourse lender, Information Leasing Corporation ("ILC"). ILC and ePlus executed an assignment agreement on May 5, 2000. (Master Assignment of Equipment Rental and Lease Agreement) The assignment agreement gave ILC the right to six payments and a security interest in the leased equipment.

On April 20, 2001, Xpedior and certain of its subsidiaries filed voluntary petitions for relief under Chapter 11 of Title 11 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101 et seq.

On June 29, 2001 the Debtor moved to reject the Lease. An order was entered on July 10, 2001 deeming the Lease rejected as of June 29, 2001. (Order Approving Rejection of Certain Unexpired Leases for Personal property and Related Services and Related Relief, July 10, 2001.) The order required Debtor to turn over all property subject to the Lease.

Some time after the entry of this order, ePlus' personnel attempted to recover the leased equipment from the Debtor. They discovered that a majority of the equipment was missing. The remaining equipment was removed, sold and the proceeds provided to ILC. (Mot. Ex. 11, Gary Lane Declaration.)

An order was entered setting the claims bar date for creditors with claims arising out of the rejection of executory contracts as (i) September 10, 2001; or (ii) within 30 days after the date of an order approving the rejection of such executory contract or unexpired lease; or (iii) such other date as may be ordered by this Court. (Order Fixing Bar Date for Filing Proofs of Claim Against Debtors, and Approving Notice and Procedures Related Thereto.)

On September 10, 2001, ePlus filed a timely claim ("Claim") seeking damages in the amount of $756,689.54 for unpaid rent including liquidated damages provided in

the Lease, reimbursement of legal fees, and taxes on the leased equipment. (Mot. Ex. 4, Proof of Claim No. 409.) On April 7, 2003, the Trustee objected to the Claim contending that the liquidated damages provision of the Lease was an invalid penalty, the Claim overstated the amount of damages due under the Lease, and the Claim did not credit the Debtor for the return of equipment. (Mot.Ex.5.)

ePlus and ILC filed separate responses defending the lease agreement and its provisions. ePlus' response, filed April 25, 2003, states "a substantial amount of the [leased] equipment was lost and never recovered due to Debtor's disorganization when it went into bankruptcy." (Mot. Ex. 6 ¶ 5, Response of ePlus Group Inc to Objection of Special Litigation Trustee.)

ILC filed its response on June 30, 2003. ILC also stated that the Debtor did not return the Leased Equipment. (Mot. Ex. 7 ¶ 13 at 4, Response of ILC to the Objection of Special Litigation Trustee.) ILC did not file a separate claim. ILC instead assumed primary responsibility for enforcing ePlus' Claim.

Xpedior's plan of liquidation, confirmed April 8, 2002, established a Special Litigation Trustee ("Trustee") to investigate, review, and object to certain claims.

ILC and the Trustee entered into discussions to settle the Claim. ePlus sought to participate but was excluded. (Mot. Ex. 8; Ex. 1, Howard Declaration ¶¶ 6–7 at 2; ILC's Motion to Compel Distribution ¶ 13 at 3.)

ILC and the Trustee settled the Claim and on December 12, 2003, an order was entered ("Stipulation Order") approving the settlement. The Stipulation Order stipulated that the Claim would be reduced by the amount of $156,689 and allowed as an unsecured claim in the amount of

$600,000. (Mot. Ex. 9, Stip. and Agreed Order.)

On June 17, 2004, ePlus moved to set aside the Stipulation Order. In that motion, ePlus argued that its claim was not assigned, ePlus was not given notice of the settlement and consequently the settlement hearing was ex parte, and the settlement was a conflict of ePlus' interest. (See Memorandum Supp. Mot. of ePlus For Reconsideration, June 21, 2004.) However, ePlus voluntarily withdrew this motion on August 13, 2004. In its pending motion, ePlus raises arguments earlier raised in attacking the Stipulation Order. However since there is no pending motion to reconsider or vacate the Stipulation Order those issues are not relevant to the issues discussed below.

ePlus now moves to amend its claim pursuant to Fed. R. Bank. P. 7015 and 9006(b)(1). The Amended Claim seeks to recover an additional $349,431.88, the fair market value of the leased equipment on June 1, 2001. ePlus contends that the Stipulation Order only resolved damages pertaining to unpaid rents and did not resolve the amount ePlus is owed for the unreturned equipment. The Trustee opposes this motion to amend, arguing that ePlus assigned all its rights, title and interest in the lease to ILC; and that ILC's settlement of the Claim fully disposed all issues arising under the Lease.

## DISCUSSION

### ePLUS Did Not Assign Its Ownership Interest in the Leased Equipment to ILC

■ This issue may be decided based on documents that appear to be undisputed.

First, the parties do not dispute validity of the assignment agreement. Rather, they dispute attributes of the assignment. The Trustee contends that ePlus assigned ownership and all rights in the leased

equipment to ILC. The Trustee points to the following provision of the Stipulation Order:

Whereas, on September 10, 2001, ePlus filed an unsecured proof of claim in the amount of $756,689.54 ... On May 5, 2002, ePlus assigned all of its rights, title and interest in the Claim to ILC.

This provision of the Stipulation Order is not binding on ePlus. ePlus neither signed the Stipulation Order nor participated in its drafting and negotiation. The Trustee and ILC cannot by virtue of their own recital divest ePlus of any rights it retained under the Lease. (Only in a Kaffa-like world can A and B take rights ways from C by an agreement not agreed to by C.) Accordingly, the provisions of the Lease itself must be scrutinized to determine if ePlus assigned to ILC all of its ownership rights in the leased equipment. The parties have not disputed authenticity of the Lease submitted to the court.

■ The Lease provides that it is governed by Virginia law. Under Virginia law, an assignee of a contract obtains his rights from the assignor and, thus, "stands in the shoes" of the assignor and acquires the same rights and liabilities as if he had been an original party to the contract. *Pollard & Bagby, Inc. v. Pierce Arrow, L.L.C.,* 258 Va. 524, 528, 521 S.E.2d 761 (Va.1999). Therefore, under the assignment from ePlus, ILC acquired whatever rights and liabilities are set forth in the Lease.

The Lease clearly indicates that ePlus retains its ownership interest in the lease equipment:

Section 7: The Assets shall at all times be and remain the sole and exclusive property of Lessor, subject to the parties' rights under any applicable software license. **Lessee shall have no right, title or interest in the Assets**

outside the leasehold interest created by the Schedules.

Section 6(c): Upon Lessor's prior written consent ... Lessee may make alterations or improvements to the Assets which increase the quality, value and capacity of the Assets, provided howeverer, **Lessee shall immediately upon installing the Improvements pass title to such Improvements to Lessor free and clear of all liens and encumbrances.** (emphasis added)

When ePlus assigned the Lease to ILC it did not relinquish this ownership interest. In fact, the assignment agreement expressly states:

Section 10(i): The Lease constitutes and will constitute a valid reservation of title by the Seller to Goods, encumbered only by the security interest created by this [agreement].

The schedule to the assignment agreement is also in accord:

In consideration of $415,056.22, receipt of which is hereby acknowledged,[ePlus] hereby sells, assigns, transfers, and sets over to ILC, its successors and assigns, the above described Lease(s) and all rents, **and all of [ePlus'] interests thereunder, provided that title to the [leased equipment] remains in [ePlus'] name.**" (emphasis added)

Thus, the Lease provisions preserved ePlus' ownership interests in the leased equipment, and ePlus did not assign that interest to ILC. ILC therefore could not settle or stipulate away rights it was never granted. Therefore, the Stipulation Order does not prevent ePlus from recovering the value of any missing leased equipment.

But other issues posed do require evidence.

### *Motion to Amend Claim Pursuant to Fed. R. Bankr.P. 7015*

ePlus moves to amend its claim under Fed. R. Bankr.P. 7015 to include damages for the unrecovered leased equipment. Bankruptcy Rule 9014 permits a court to extend Rule 7015 to contested matters such as the adjudication of proofs of claims. *See In re Stavriotis*, 977 F.2d 1202 (7th Cir.1992); *In re Unroe*, 937 F.2d 346 (7th Cir.1991).

■ Fed.R.Civ.P. 15(a) is incorporated into Fed.R.Bankr.P. 7015. It provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Courts generally interpret Rule 15 liberally, allowing amendments "where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." *U.S. v. Stavriotis*, 129 B.R. 527, 529 (N.D.Ill.1991) (citing *In re Intern. Horizons, Inc.*, 751 F.2d 1213, 1216 (11th Cir.1985)), aff'd, *In re Stavriotis*, 977 F.2d 1202 (7th Cir.1992).

■ The decision to allow a creditor to amend a claim is within the sound discretion of the bankruptcy judge. *Stavriotis*, 977 F.2d at 1204

■ Leave to amend may be inappropriate where factors such as undue prejudice would result to the opposing party, or where undue delay, bad faith, dilatory motive, or futility are shown. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); see *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir.1992) (quoting *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir.1991)).

■ Review of the briefs and exhibits submitted cannot determine the foregoing

issues which are contested. The proposed ePlus amended claim assumes that the leased equipment was stolen or lost on June 1, 2001. It does not provide documentary or other support for its assertion. Its original claim, filed September 10, 2001, did not mention the unrecovered leased equipment. The first mention is the ePlus response to the Trustee's claim objection in April 25, 2003. If ePlus was aware that the equipment was missing in 2001 and failed to asserts its rights until 2004, this might along with other evidence be considered undue delay or undue prejudice. *See Amendola v. Bayer,* 907 F.2d 760, 764 (7th Cir.1990) (affirming denial of leave to amend claim where litigant was aware of the facts underlying the claim before the filing deadline and presented no excuse for failing to raise the claim earlier.)

The Trustee asserts that ePlus filed the instant motion only after it learned that unsecured creditors would receive significant distributions under the Debtor's confirmed plan. The Trustee further points to ePlus' laxity in the bankruptcy case including ePlus failure to file appearances or request notice. These factors might together with other evidence suggest bad faith or dilatory motive.

ePlus responds that ILC, its assignee, assumed the primary responsibility to recover damages for lost rent and the missing equipment. Once it became apparent that ILC could or would not recover damages for the missing equipment, ePlus argues that it immediately attacked the Stipulation and later moved to amend its claim.

In the absence of evidence, it cannot be determined which argument is supported by the facts or whether or not undue prejudice is implicated. Therefore, decision must await an evidentiary hearing.

### The Alternative Motion to File a Late Claim

◼ In the alternative, ePlus seeks to amend its Claim based on the doctrine of excusable neglect.

◼ Under some circumstances a court may allow amendment of a claim after the bar date has passed based on excusable neglect. Fed. R. Bankr.P. 9006(b)(1) provides:

> when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion ... on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

*Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) held that neglect "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." However, such neglect must also be excusable. Id. at 397, 113 S.Ct. 1489. The inquiry is an equitable one, taking into account all of the relevant circumstances surrounding a party's conduct, including ◼ the danger of prejudice to the debtor, ◼ the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was in the reasonable control of the movant, and [4] whether the movant acted in good faith. 507 U.S. at 389, 113 S.Ct. 1489. The movant bears the burden of proof. *In re Kmart,* 381 F.3d 709 (7th Cir.2004) (holding that it is movant's burden to prove the Pioneer factors and not the Debtors.) As of yet no evidence hearing has been held to enable the excusable neglect determination.

### Is there Danger of Prejudice to the Debtor?

ePlus asserts that the Debtor will suffer no prejudice since the amended claim includes the same loss as the original claim and the facts as to the amended claim were known to the Debtor. (Mot. ¶ 12 at 5.) ePlus asserts further that there is no prejudice to other creditors as all general unsecured claims will be paid in full.

 Prejudice is not simply whether a Debtor has money in its plan to pay the claim at issue. *Manus Corp. v. NRG Energy, Inc. (In re O'Brien Environmental Energy Inc.)*, 188 F.3d 116, 126 (3d Cir.1999). Prejudice is based on an assessment of:

> the size of the claim with respect to the rest of the estate; whether allowing the late claim would have an adverse impact on the judicial administration of the case; whether the plan was filed or confirmed with knowledge of the existence of the claim; the disruptive effect that the late filing would have on the plan or upon the economic model upon which the plan was based; and whether allowing the claim would open the floodgates to other similar claims.

*Ibid.* As stated above, the first claim that leased equipment is missing was made April 25, 2003. The Debtor's plan was confirmed on April 8, 2002. It is unclear whether the Debtor knew of the existence of the ePlus Claim or proposed Amended Claim and took it into account in formulating its plan or whether the Claim and Amended Claim accrued post-confirmation. Moreover, evidence is needed demonstrating whether or not permitting the late filed claim would open the flood gates to similar late claimants and also evidence permitting an assessment of the size of the claim in relation to the total pool of claims. The only matter provided to the Court pertaining to the Debtor's plan comprise the as yet unsubstantiated beliefs of ePlus that all creditors will be paid in full. But this is as yet unverifiable, since neither party ever provided the Court with a comparison of the Debtor's plan with subsequent disbursement statements.

Equally important, the proposed amended claim values the leased equipment as of June 1, 2001. If the equipment was lost before or after this date, the amount of the ePlus claim may change. A finding of prejudice or its absence must be based on concrete facts in evidence, not speculation. *See O'Brien Environmental Energy Inc.*, 188 F.3d at 127.

### Reason for the Delay

The reason for delay in filing the amended claim may be a persuasive factor in the *Pioneer* analysis. *In re Kmart*, 381 F.3d 709, 715 (7th Cir.2004). That requires evaluation of the movant's conduct as well the Debtor's conduct. *See Chemetron Corp. v. Jones*, 72 F.3d 341, 350 (3d Cir. 1995). As to the ePlus conduct, evidence must establish when it discovered that leased equipment was missing. If it made the discovery in June 2001, it must explain by evidence why failed to assert its rights until 2004.

As to the Debtor's conduct, ePlus may have some evidence that the Debtor contributed to failure of ePlus to discover that the equipment was missing before the bar date. The ePlus response to the Trustee's objection to its Claim stated that "a substantial amount of the [leased] equipment was lost and never recovered due to Debtor's disorganization when it went into bankruptcy." The proposed Amended Claim states, "In August 2001, after several requests to the debtor, ePlus personnel were allowed to come to the debtor's premises" to recover the leased equipment. This implies that the Debtor may have hindered attempts by ePlus to recover its

equipment, thereby delaying the filing of its amended claim.

Whether this means that the Debtor knowingly delayed discovery by ePlus that the equipment was missing or the delay had some other explanation cannot be determined without evidence. Also unclear as yet is how the Debtor responded to ePlus requests to recover the equipment.

## CONCLUSION

On all the foregoing factual issues, an evidentiary hearing must be held.

For reasons set forth above and, by order to be entered separately an evidentiary hearing will be set on the Motion to resolve the factual issues.