## In re CABLE & WIRELESS USA, INC., et al., Debtors.

### No. 03–13711.

United States Bankruptcy Court, D. Delaware.

Jan. 6, 2006.

Curtis A. Hehn, James E. O'Neill, Laura Davis Jones, Scotta Edelen McFarland, Pachulski, Stang, Ziehl, Young, Jones & Wein, Sean T. Greecher, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for Debtors.

Edmon L. Morton, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for Creditor Committee.

Gene Phillip Killian, Heinly, Benson & Kramer, Tustin, CA, for 3rd Pty. Defendant.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

Before the Court is the Virginia Employment Commission's ("VEC") Motion for Leave to File Late Proof of Claim ("VEC Motion"). The trustee of the Omega Liquidating Trust (the "Trustee") has filed an opposition to the VEC Motion ("Trustee's Opposition").

The Court acquires core matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), (b) and 1334(b). Upon a duly noticed hearing, the following factual findings and conclusions of law are hereby rendered:

\*

The Debtors[1] provided internet protocol, voice and data services to business and

---

1. The Debtors consist of the following entities: Cable & Wireless USA, Inc., Cable & Wireless USA of Virginia, Inc., Cable & Wireless Internet Services, Inc., Exodus Communications Real Property I, LLC, Exodus Communications Real Property Managers I, LLC, and Exodus Communications Real Property I, LP (collectively, the "Debtors").

residential customers, as well as services to other telecom carriers, mobile operators and providers of content, applications and internet services. On December 8, 2003, the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Code"). On January 26, 2004, this Court entered an order authorizing the Debtors to sell substantially all of their assets pursuant to an asset purchase agreement to SAVVIS, Inc. The Debtors' Third Amended Joint Plan of Liquidation (the "Plan") was confirmed on July 14, 2004, and became effective on August 4, 2004. The remaining property of the Debtors' estates was transferred to the Liquidating Trust. Pursuant to the Plan, the Trustee is charged with the duty of administering the remaining assets of the consolidated bankruptcy estates and making distributions.

On January 8, 2004, this Court entered an order setting June 7, 2004 as the deadline for governmental units, such as the VEC, to file claims against the Debtors (the "Bar Date"). The VEC admits that it received notice of the Bar Date. On August 8, 2005, the VEC filed a motion seeking authorization to file a late proof of claim for unemployment insurance taxes in the amount of $428,442.21 allegedly overdue from Digital Island, Inc. ("Digital"), now a wholly owned subsidiary of the Debtors.

\* \*

Prior to July 2001, Digital and the Debtors were distinct employers operating in the Commonwealth of Virginia. Both were registered with the Virginia Employment Commission ("VEC"), the entity responsible for administering unemployment insurance in Virginia pursuant to the Social Security Act of 1935. In July 2001, Digital was acquired by the Debtors, and

was renamed Cable & Wireless Internet Services, Inc. ("CWIS"). Subsequent to the acquisition by the Debtors, CWIS continued to file quarterly reports with the VEC under the account number originally assigned to Digital.

The VEC argues that it was unaware that Digital was a subsidiary of the Debtors until June 2005, and therefore had no reason to file a proof of claim prior to the Bar Date. The VEC also argues that, because of the large number of employers in the Commonwealth of Virginia, account numbers are the only way to identify each employer. The VEC also notes that on June 26, 2002, after being acquired by the Debtors, Digital sent a letter to the VEC on its own letterhead informing the VEC of the acquisition of a separate company, Exodus Communications, Inc. ("Exodus").[2] Further, a change of address letter from the Debtors on November 4, 2003, referenced only the account number of Cable & Wireless USA ("CWUSA"), and did not mention Digital.[3] The VEC argues that because it did not have any knowledge that the account numbers of Digital and the Debtors were related, and because the Debtors did not owe any unemployment insurance taxes at the time it received notice of the bankruptcy case, it had no reason to file a proof of claim in the Debtors' case.

The Trustee responds that the VEC knew, or should have known, of the relationship between Digital and the Debtors, and therefore its failure to file a timely proof of claim was not the result of excusable neglect. Initially, the Trustee looks to the employer's quarterly tax reports filed by CWIS (formerly Digital) after being acquired by the Debtors (collectively, the

---

**2.** Exhibit C to VEC Motion.

**3.** Exhibit F to VEC Motion.

"Tax Reports").[4] The Trustee notes that the Quarterly Tax Reports were filed under the employer name "Cable & Wireless Internet Srvc., Inc. (fka Digital Island, Inc.)," and used Digital's Federal Tax ID number and VEC account number. Additionally, the Bar Date Notice provided to the VEC identifies "Digital Island Inc." as a name previously used by one of the Debtors.[5] The Trustee argues that any of these documents provided ample and adequate notice of the relationship between Digital and the Debtor, and therefore the VEC's failure to file a proof of claim was not due to excusable neglect.

\* \* \*

■ Federal Rule of Bankruptcy Procedure 9006(b) provides that a bankruptcy court "for cause shown may at any time in its discretion" grant an enlargement of time to act "where the failure to act was the result of excusable neglect." FED. R. BANKR.P. 9006(b)(1). "The 'excusable neglect' standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). As the party seeking relief, the creditor seeking to file a late proof of claim bears the burden of proving excusable neglect by a preponderance of the evidence. *E.g., Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir.2000); *In re National Steel Corp.*, 316 B.R. 510, 515 (Bankr.N.D.Ill.2004).

■ In *Pioneer*, the United States Supreme Court enumerated four factors for evaluating when neglect is excusable:

(1) danger of prejudice to the debtor;

(2) the length of the delay and the resulting potential impact on judicial proceedings;

(3) the reason for the delay, including whether the delay was within the reasonable control of movant; and

(4) whether the movant acted in good faith

*Pioneer*, 507 U.S. at 395, 113 S.Ct. 1489. After weighing these factors, "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.*; *In re American Classic Voyages Co.*, 405 F.3d 127, 133 (3d Cir.2005) ("All factors must be considered and balanced; no one factor trumps the others."); *In re Spring Ford Industries, Inc.*, 2003 WL 21785960, *2 (Bankr.E.D.Pa.2003) (citing *In re Cendant Corp. Prides Litigation*, 233 F.3d 188, 196 (3d Cir.2000)) (court shall consider totality of the circumstances); *In re XO Communications, Inc.*, 301 B.R. 782, 796 (Bankr.S.D.N.Y.2003) (citations omitted) ("The relative weight, however, to be accorded to the factors identified in *Pioneer* requires recognizing that not all factors need to favor the moving party .... no single circumstance controls, nor is a court to simply proceed down a checklist ticking off traits. Instead, courts are to look for a synergy of several factors that conspire to push the analysis one way or the other"). The determination of excusable neglect is at the discretion of the bankruptcy court. *Jones v. Chemetron Corp.*, 212 F.3d at 205 ("We review the bankruptcy court's ultimate determination regarding the existence of excusable neglect for abuse of discretion.").

\* \* \* \*

The Court is guided by the *Pioneer* factors to determine whether the VEC's failure to file a claim was due to excusable neglect. *See, e.g., In re O'Brien Environ-*

---

**4.** Exhibits A–E to Trustee's Opposition.

**5.** Bar Date Notice, Exhibit F to Trustee's Opposition, at 1 n.4.

*mental Energy, Inc.*, 188 F.3d 116, 126 (3d Cir.1999).

### 1. *Danger of Prejudice to the Debtors*

 The VEC, as the party seeking to file a late claim, carries the burden of proving a lack of prejudice to the Debtor. *See In re KMart*, 381 F.3d 709, 714 (7th Cir.2004). "In applying the *Pioneer* test, courts place the greatest weight on whether any prejudice to the other parties will occur by allowing a late claim. There is no prejudice when all the parties can be placed in the same situation that they would have been in if the error had not occurred." *In re Tannen Towers Acquisition Corp.*, 235 B.R. 748, 755 (D.N.J.1999). "Prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence." *In re O'Brien*, 188 F.3d at 127. Relevant factors that may be considered when determining whether there is danger of prejudice to the debtors include:

 whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated;

 whether the payment of the claim would force the return of amounts already paid out under the confirmed Plan or affect the distribution to creditors;

 whether payment of the claim would jeopardize the success of the debtor's reorganization;

 whether allowance of the claim would adversely impact the debtor actually or legally; and

 whether allowance of the claim would open the floodgates to other future claims.

*In re Inacom Corp.*, 2004 WL 2283599, *4 (D.Del.2004) (citing *In re O'Brien*, 188 F.3d at 125–26). Other factors that have been examined include the size of the claim with respect to the rest of the estate and whether the plan was filed or con-firmed with knowledge of the existence of the claim. *In re O'Brien*, 188 F.3d at 126.

The Trustee argues that the Debtors will be prejudiced by the late filed claim of the VEC for two reasons. First, the Court has approved a reserve to be set aside for all known claims. This reserve was established without knowledge of the taxes due to the VEC. Second, the Trustee asserted at oral argument that any information that would be available to verify the Debtors' tax liability, including any relevant persons, papers, and computer files, is now unavailable. The VEC has provided no evidence to refute either of these contentions.

 The fact that the VEC's claim may reduce the funds available to unsecured creditors does not, by itself, establish prejudice to the Debtors. *In re O'Brien*, 188 F.3d at 126 (citing *In re R.H. Macy & Co., Inc.*, 166 B.R. 799, 802 (S.D.N.Y.1994)) ("We believe that *Pioneer* requires a more detailed analysis of prejudice which would account for more than whether the Plan set aside money to pay the claim at issue. Otherwise, 'virtually all late filings would be condemned by this factor.' "); *In re Xpedior Inc.*, 325 B.R. 392, 399 (Bankr.N.D.Ill.2005) ("Prejudice is not simply whether a Debtor has money in its plan to pay the claim at issue."); *In re Spring Ford Industries, Inc.*, 2003 WL 21494002, *3 (Bankr.E.D.Pa.2003). This factor may be considered, however, especially where a plan has been confirmed and a reserves set aside to pay timely filed claims. *In re Inacom Corp.*, 2004 WL 2283599, at *5 n. 3 ("The Third Circuit, however, did not state that an analysis of prejudice should not include whether the Plan set aside money to pay the claim at issue as one of the factors to consider. Rather, the Third Circuit stated that it should not be the only factor that the

Bankruptcy Court considers in determining whether there is potential prejudice to the debtor."). Allowing the VEC's late claim would prejudice the Debtors in this regard. *See In re XO Communications, Inc.,* 301 B.R. at 797–98 (In bankruptcy, a bar date notice is "meant to function as a statute of limitations and effectively exclude such late claims in order to provide the Debtor and its creditors with finality to the claims process and permit the Debtor to make swift distributions under the Plan."); *In re Farmland Industries, Inc.,* 318 B.R. 159, 164 (Bankr.W.D.Mo.2004) ("Some courts have concluded that a confirmed plan indicates that prejudice will result to the debtor if a late-filed proof of claim is permitted."); *In re Agway, Inc.,* 313 B.R. 31, 45 (Bankr.N.D.N.Y.2004) ("This payment from the Debtors' estates would deplete the pool of funds available for distribution to unsecured creditors who timely filed proofs of claim in this case, as would also the allowance of the claim of the Debtors' insurer for funds paid beyond the policy amount. The Court finds this scenario prejudicial to the Debtors, especially given that a plan that does not account for this litigation has already been filed."); *In re Alexander's Inc.,* 176 B.R. 715, 722 (Bankr.S.D.N.Y.1995) (citing *In re Drexel Burnham Lambert Group, Inc.,* 148 B.R. 1002, 1007 (S.D.N.Y.1993)) ("acceptance of a substantial late claim after consummation of a vigorously negotiated claims settlement and Plan of Reorganization thereon and a distribution of a major part of the assets thereunder, would disrupt the economic model on which the creditors, the debtor and the stockholders reached their agreements").

Further, the asserted loss of evidence would prejudice the Debtors, who would no longer have the ability to challenge the amount or the validity of the VEC's claim. *E.g., In re O'Brien,* 188 F.3d at 127 ("it is difficult to see what cognizable prejudice, in the sense, for example, of lost evidence"); *Advanced Communication Design, Inc. v. Premier Retail Networks, Inc.,* 46 Fed.Appx. 964, 973 (Fed.Cir.2002) ("prejudice refers to more concrete and litigation-specific difficulties, such as loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion."); *In re Ezekoye,* 308 B.R. 738, 749 (Bankr.W.D.Pa.2004) (citing *Scarborough v. Eubanks,* 747 F.2d 871, 876 (3d Cir.1984)) (" 'true prejudice' that would bear substantial weight are the irretrievable loss of evidence . . .").

Other factors counsel against prejudice to the Debtors. The Debtors could have anticipated that it would need to pay overdue taxes, as it possessed the tax records to be aware of Digital's delinquency. The VEC asserts that substantial amounts remain available to pay its claim, if allowed. Further, since the Debtors' plan is a liquidating plan, allowance of the VEC claim would have no effect on the Debtors' ability to successfully complete their plan. *See In re Sacred Heart Hosp. of Norristown,* 186 B.R. 891, 897 (Bankr.E.D.Pa.1995) ("Allowance of a late claim, in such circumstances, will generally merely result in a slightly different distribution of a liquidating debtor's assets. Exactly how the debtor's assets are distributed is ultimately of little consequence to the debtor, so long as the claim is not filed so late as to disrupt the distribution process."). The Trustee does not provide any evidence to suggest that allowing the VEC's claim would open the floodgates for similar requests by other claimants.

After consideration of all of the relevant circumstances, however, the VEC has failed to show by a preponderance of the evidence that the Debtor would not be prejudiced by the filing of a late claim.

## 2. *Length of the Delay*

The VEC's delay is substantial, as the request to file a late proof of claim comes over one year after the original governmental claims bar date, and over two years after the due date for the overdue taxes. *In re O'Brien*, 188 F.3d at 130 ("*Pioneer* teaches that we should consider the length of the delay in absolute terms."); *see also In re Enron Corp.*, 298 B.R. 513, 526 (Bankr.S.D.N.Y.2003) ("length of delay in filing the Proof of Claim here is substantial, that is, it was filed more than six months after Bar Date."); *In re XO Communications*, 301 B.R. 782, 797 (Bankr.S.D.N.Y.2003) (finding that a delay of four months weighed against permitting a late proof of claim); *In re Limited Gaming of America, Inc.*, 213 B.R. 369, 377 (Bankr.N.D.Okl.1997) ("The lapse of thirteen months between the expiration of a claims deadline and the submission of a proof of claim presents the danger of prejudice to a debtor and has a significant potential impact on the judicial proceedings."). Although the length of delay weighs against the VEC, this factor, alone, "is not dispositive of whether a movant's neglect is excusable. The significance of delay, as well as each of the other *Pioneer* factors, will depend on the circumstances surrounding it." *In re Agway, Inc.*, 313 B.R. 22, 29 (Bankr.N.D.N.Y. 2003); *In re Aargus Polybag Co., Inc.*, 172 B.R. 586, 591 (Bankr.N.D.Ill.1994) ("Cases addressing this precise issue have all examined the relationship between the length of the delay and the movant's control over the circumstances causing the delay in order to determine the reasonableness of an untimely filing.").

## 3. *Reason for the Delay*

The third *Pioneer* factor is the reason for the delay, including whether the delay was within the reasonable control of the movant. The Trustee cites numerous documents which could have given the VEC notice of Digital's acquisition by CWUSA. The VEC argues that because of the high volumes of accounts and correspondence that it must process, its systems are designed to look only for the account number referenced on the Tax Reports. The VEC, however, was in the best position to control its own procedures in determining the time limits for submitting a proof of claim. This argument does not absolve the VEC of the consequences of failing to adhere to the bar date.

A bar date notice will not contain the account numbers of the debtor or any of the entities of the debtors. In this case, the Bar Date Notice set forth the June 7, 2004 deadline for filing a claim, and also stated that Digital was a name formerly used by the Debtors. There is no dispute that the VEC received service of the Bar Date Notice, or that the Bar date was unambiguous. *See In re Orthopedic Bone Screw Products Liability Litigation*, 246 F.3d, 315, 328 (3d Cir.2001) ("In considering the reason for the delay, we are not constricted in examining the conduct of the claimant which contributed to the delay, but may examine as well whether the notice given by the PLC also contributed to the delay."); *In re Greater Southeast Community Hosp. Corp. I*, 327 B.R. 1, 5 (Bankr.D.D.C.2005) (citing *In re Robintech, Inc.*, 863 F.2d 393, 396 (5th Cir.)) ("[a] creditor's claim can be barred for untimeliness only upon a showing that it received reasonable notice."); *In re Freeport Kitchen Foods, Inc.*, 1996 WL 761437, *3 (Bankr.W.D.Pa.1996) ("The neglect to timely file a proof of claim after having actual, timely and adequate notice was not excusable."); *In re Keene Corp.*, 188 B.R. 903 (Bankr.S.D.N.Y.1995) ("On the other hand, had the bar date notice in *Pioneer* been separate and conspicuous, as it is in the usual chapter 11 case, the language in

*Pioneer* equally supports the conclusion that the Supreme Court would have reached the opposite result.").

██ The VEC, however, argues that since C & W did not owe unemployment taxes, it believed that no further action was necessary. The VEC surely is aware that debtors will often consist of numerous entities containing various names or trade names. The Debtors' bar date notice expressly states that Digital was another name used by CWIS. The VEC cannot argue persuasively that because it receives a high volume of customers, it is excused from disregarding the contents of the Bar Date Notice. *See In re Walker*, 332 B.R. 820, 831 (Bankr.D.Nev.2005) (citing 13 JAMES WM. MOORE, ET. AL., MOORE'S FEDERAL PRACTICE § 60.41[1][c][ii] (3d ed. 2005)) ("Mistakes resulting from institutionalized procedures, or lack of 'quality control' type of procedures, are not excusable."); *In re National Steel Corp.*, 316 B.R. 510, 518 (Bankr.N.D.Ill.2004) ("It is not the duty of the Debtors to make JFE or any of its creditors aware of every potential claim they may have against the Debtors. To the contrary, it was JFE's responsibility to explore, investigate and file a proof of claim against the Debtors, not the other way around.... JFE's problem here is a 'self-inflicted' wound, and it has no one to blame but itself for this predicament."); *In re Grand Union Co.*, 204 B.R. 864, 870 (Bankr.D.Del.1997) ("Excusable neglect is obviously premised on some acknowledged mistake or fault on the part of the movant."); *In re Best Products Co., Inc.*, 140 B.R. 353, 359 (Bankr.S.D.N.Y.1992) ("A finding to the contrary would, in effect, allow any creditor who has neglected to comply with a bar date to seek an extension on the grounds of excusable neglect because it did not read the notice."). Other taxing authorities have similar volume considerations. The excusable neglect standard does not create an blanket exception for such authorities. *In re Benny's Leasing, Inc.*, 166 B.R. 823, 825 (Bankr. W.D.Pa.1993).

The Trustee also notes that although the late payments were due in April of 2003, the VEC did not separately demand payment from Digital. This fact undercuts the VEC's contention that its failure to file a claim was due solely to a lack of knowledge that Digital had been acquired by the Debtors.

The reason for the delay weighs against a finding of excusable neglect, as the VEC 1) received timely notice of the Bar Date, 2) was in possession of other information that could have informed it of the acquisition of Digital by the Debtors, 3) and nonetheless failed to file a proof of claim until one year after the Bar Date.

### 4. *Good Faith of the VEC*

The Trustee has made no specific allegation that the VEC is acting in bad faith, nor is there reason to believe that this motion was motivated by an improper purpose. *See In re Spring Ford Industries, Inc.*, 2003 WL 21785960, *3 (Bankr. E.D.Pa.2003).

\* \* \* \* \* \*

After reviewing the *Pioneer* factors, the Court finds that there would be prejudice to the Debtors, the length of delay is substantial, and the reason for the delay was within the reasonable control of the VEC. There is no evidence of bad faith of the VEC. For the foregoing reasons, the totality of the circumstances persuade the Court that the VEC's failure to file a timely proof of claim was not due to excusable neglect.

\* \* \* \* \* \*

Accordingly, the VEC's motion to file a late proof of claim is not well premised and is hereby DENIED. The Trustee's Oppo-

sition is hereby SUSTAINED. Each party is to bear its respective costs.

**IT IS SO ORDERED.**